**Max GRILL**

v.

**Alan P. HOBLITZELL, Jr., et al.**

**Civ. No. JFM–90–2234.**

United States District Court,
D. Maryland.

May 29, 1991.

George Edwin Golomb, Baltimore, Md., Stanley D. Bernstein, Kreindler and Kreindler, New York City, for plaintiff.

John Henry Lewin, Jr., Venable, Baetjer & Howard, Baltimore, Md., Alexander Bennett, Arnold and Porter, Washington, D.C., Morton Sacks, Cable, McDaniel, Bowie & Bond, Baltimore, Md., for defendants.

## MEMORANDUM

MOTZ, District Judge.

This is a shareholder derivative action brought by Max Grill against the current and former members of the board of directors of MNC Financial, Inc. ("MNC"). Plaintiff alleges that the defendants committed various acts or omissions constituting waste and mismanagement, including permitting MNC to make a "perilously high" percentage of real estate loans, authorizing loans with incomplete documentation and inadequate credit analyses and failing to maintain adequate loan loss reserves.[1] Defendants have moved to dismiss on the ground that plaintiff has failed to allege with particularity, as required by Fed.R.Civ.P. 23.1, the reasons that he has not made a demand upon MNC's directors and shareholders prior to instituting the action. Defendants also assert that the complaint fails to state a claim upon which relief can be granted.

### I.

The threshold question presented is whether Maryland law or federal law governs whether demand must be made upon a corporation's directors and shareholders prior to the institution of a derivative action. In *Meltzer v. Atlantic Research Corp.*, 330 F.2d 946, 948 (4th Cir. 1964), *cert. denied* 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964), the Fourth Circuit indicated that "[t]he necessity and sufficiency of the preliminary demand upon the directors, and the circumstance which satisfies omission of such demand ... would seem to be procedural in nature and hence governed by Federal law." However, the Supreme Court's recent decision in *Kamen v. Kemper Financial Services, Inc.*, — U.S. —, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), unquestionably establishes that Maryland law controls the question. Al-though in *Kamen* the Supreme Court looked to state law as the source for the creation of federal common law (since a federal claim was there in issue), the premise of the Court's opinion was that state demand futility law applies to state causes of action, such as those involved here. *Id.* at —, 111 S.Ct. at 1722. *See also RCM Securities Fund, Inc. v. Stanton*, 928 F.2d 1318, 1327–28 (2d Cir.1991).[2]

### II.

Under Maryland law demand upon directors to bring a derivative action is excused where the directors are dominated and controlled by persons who are alleged to be guilty of the misconduct alleged in the proposed action. *See, e.g., Parish v. Maryland & Virginia Milk Producers Ass'n*, 250 Md. 24, 242 A.2d 512 (1968), *cert. denied*, 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971); *Burt on Behalf of McDonnell Douglas Corp. v. Danforth*, 742 F.Supp. 1043 (E.D.Mo.1990); *Lawson v. Baltimore Paint & Chemical Corp.*, 347 F.Supp. 967, 975 (D.Md.1972). Relying upon such cases, plaintiff contends that because he has charged all of the directors of MNC with dereliction of duty, he is excused from making any demand upon them.

Plaintiff's position is overly simplistic. As he himself urges, Maryland law requires a "practical" and "common sense" inquiry into the issue of whether a demand upon directors (and shareholders) would be futile. *See, e.g., McQuillen v. National Cash Register Co.*, 22 F.Supp. 867 (D.Md. 1938), *aff'd* 112 F.2d 877 (4th Cir.1940); *Parish*, 242 A.2d at 545. Common sense dictates that this inquiry cannot begin and end with a mere conclusory allegation that the directors have been guilty of misconduct. If that were all that were required, the futility exception would swallow the

---

**1.** The complaint originally contained a second count relating to a preferred stock agreement between MNC and the defendants. However, the agreement was never consummated, and that count has been voluntarily dismissed.

**2.** Perhaps it should be noted that *Kamen* does recognize that although state law defines the circumstances under which a demand must be made, Fed.R.Civ.P. 23.1 itself, as a matter of federal law, requires that the grounds allegedly excusing demand under the governing state law be plead with particularity. *Kamen*, — U.S. at — n. 10, 111 S.Ct. at 1723 n. 10.

demand rule. *See, e.g., Lewis v. Graves,* 701 F.2d 245, 250 (2d Cir.1983). Thus, at least a modicum of further analysis is required.[3]

■ The starting point for that analysis must be ascertaining the nature of the claim which plaintiff seeks to assert. The complaint is of little assistance in this effort. It contains boilerplate allegations and does not distinguish among the directors and the roles which they allegedly played in the alleged wrongdoing. Nor are any particulars provided as to the dates on which misconduct allegedly occurred. The latter deficiency is particularly critical because, as defendants point out, MNC has, pursuant to Maryland Corps. and Ass'ns Code Ann. § 2–405.2 (1989 supp.), adopted charter amendments which, as to all claims arising after February 18, 1988, restrict director monetary liability to situations involving "active and deliberate dishonesty" or the actual receipt of an improper benefit. Plaintiff does not allege any acts falling in these categories. Therefore, none of the directors who joined the board after February 18, 1988 are exposed to any risk of a monetary judgment against them in connection with the claims which plaintiff seeks to assert on behalf of MNC.[4] At the time this suit was filed, five of MNC's directors had been appointed after February 18, 1991, and recently several other new directors have been appointed.

Plaintiff has not articulated any reason, except for the insurance issue discussed in section III, *infra,* why the post-February 18, 1988 directors could not constitute a special litigation committee to determine the propriety of pursuing pre-February 18, 1988 claims on behalf of MNC. *See Rosengarten v. Buckley,* 613 F.Supp. 1493, 1498–99 (D.Md.1985). Indeed, the insurance issue aside, plaintiff has articulated no reason why the board as a whole could not in a disinterested manner consider the propriety of instituting an action on behalf of MNC against the relatively few persons who served as inside directors or otherwise may have been personally involved in suspect transactions prior to February 18, 1988.

■ All that plaintiff does is to vaguely assert that because of personal relationships among the directors, it is unlikely that the board would authorize suit against any of its present or former members. Again, however, to accept this allegation as conclusive would effectively abrogate the demand rule in its entirety. Furthermore, in seeking to establish that wrongdoing has occurred, plaintiff relies upon public statements which had been made by Alfred Lerner, the present chairman of MNC, which have been critical of MNC's prior management and lending practices. These statements themselves evidence a degree of open-mindedness which belie any allegation that the present board would necessarily reject a legitimate demand that suit be instituted against persons who may have been responsible for mismanagement and a waste of corporate assets.[5]

---

**3.** Of course, underlying what may appear to be a technical procedural issue is a question of substantial import. If a plaintiff is not required to make any demand, he may file an action without any review of its advisability. If he is required to make a demand and the directors determine not to institute the action, their decision is entitled to at least some degree of deference under the "business judgment" rule. *See generally, Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984); 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure,* Civil 2d § 1831 at 98 n. 6. *See also United Copper Securities Co. v. Amalgamated Copper Co.,* 244 U.S. 261, 263, 37 S.Ct. 509, 510, 61 L.Ed. 1119 (1917).

**4.** The absence of such allegations, incidentally, provides a crucial distinction between this case and *Parish v. Maryland & Virginia Milk Producers Ass'n,* 250 Md. 24, 242 A.2d 512 (1968), the

case most frequently cited to establish that Maryland law is liberal in excusing demand upon directors. In *Parish* the board members were alleged to have engaged in "self-dealing" and to have committed "serious infractions of the antitrust laws of the United States" and to have issued "indirect, misleading and contradictory reports and financial statements" to members of the Association. 250 Md. at 39, 242 A.2d at 520. *See also In re Midlantic Corporation Shareholder Litigation,* 758 F.Supp. 226 (D.N.J.1990).

**5.** Plaintiff argues that even if the present members of the board can be disinterested in deciding whether to institute suit against those directors who may be liable for pre-February 18, 1988 conduct, they cannot be disinterested to the extent that plaintiff alleges that they are guilty of continuing mismanagement and seeks injunctive relief requiring them to meet their

## III.

■ Plaintiff asserts that certain provisions in MNC's directors' and officers' liability insurance policies constitute an additional reason why it would be futile for him to make a demand upon MNC's board before instituting any action seeking monetary relief against any directors for pre-February 18, 1988 conduct. Specifically, he alleges in the complaint that under the D & O policies which MNC has purchased for the purpose of indemnifying directors and officers against liability for mismanagement of the bank's affairs,

> the Corporation would be required by the carriers to cooperate in the defense of claims seeking to impose liability upon officers and directors of the Corporation, including the Individual Defendants in this action. Thus, the insurance carriers would argue that the Corporation and its board of directors are contractually disabled from complying with any demand that they cause the Corporation to institute and/or prosecute any action against the Individual Defendants. The Corporation would be discouraged from pursuing the Individual Defendants directly as it would not benefit from any insurance coverage they may have.

At oral argument plaintiff's counsel further represented that MNC's indemnity policies contain a provision which permit coverage in a derivative action instituted by a shareholder but which exclude coverage for

any action instituted by MNC at the board's own direction.

If what plaintiff has alleged and represented is true, it may very well be that a demand upon the directors to institute an action seeking monetary relief from any present or past director would be futile. If the directors authorized the purchase of indemnity policies which would exclude coverage in the event that they directed MNC to institute a suit claiming mismanagement and waste of corporate assets, they may well have been deemed to have used corporate resources to create an asset (potential recovery under the indemnity policies) which they are incapable of realizing for MNC. Further, since a recovery under an insurance policy is self-evidently different from recovery against personal assets, if what plaintiff alleges is true, the directors may have deprived themselves of the ability to exercise independent judgment as to the advisability of instituting an action against any officer or director for mismanagement and thereby divested themselves of the power to govern this aspect of the corporation's affairs.[6]

For these reasons the Complaint will be dismissed but plaintiff will be granted leave to file an amended complaint on or before June 14, 1991. In the amended complaint plaintiff should state with greater precision the claims he is pursuing, identify specifically the defendants against whom he is pursuing them and allege with particularity the circumstances which he asserts

---

fiduciary duties. *See* Hanks, *Evaluating Recent State Legislation on Director and Officer Liability Limitation and Indemnification,* 43 *The Business Lawyer* 1207, 1215 (1988). Assuming that this is so, plaintiff has not alleged why a demand upon shareholders seeking authorization for the filing of such a suit would be futile. Maryland law generally requires a demand on shareholders, *see Parish v. Maryland & Virginia Milk Producers Ass'n,* 250 Md. 24, 82, 242 A.2d 512, 544 (1968); *Eisler v. Eastern States Corp.,* 182 Md. 329, 333, 35 A.2d 118, 119–20 (1943), and such a demand would clearly seem to be appropriate as to any injunctive claim. If presented with the demand, the shareholders might well conclude that, weighing the rather meager benefit of successfully obtaining an injunction (which would merely require the directors to do what they are already legally obligated to do) against the costs, divisiveness and

other detriments involved, it would be against MNC's interest to pursue the litigation.

**6.** Perhaps it could be argued that even if the provisions of the indemnity policies excuse demand upon the directors, they do not excuse demand upon the shareholders. This obviously turns, in part, upon the terms of the policies. However, whatever the policies might expressly say about shareholder demand, it may very well be that if the policies preclude the directors from authorizing suit, a multitude of considerations (including the uncertain role of the directors in any proxy contest over the proposed suit, the complexity of the insurance issues themselves and the benefit which would accrue to the insurer by the running of limitations while those issues were being resolved) might well render any demand upon the shareholders impractical.

excuse his making of demand, including the provisions of any D & O policies which he contends are pertinent.