### In re MORTGAGE AND REALTY TRUST SECURITIES LITIGATION

**This Document Relates to Davidsohn and Wade.**

No. 90–1848.

United States District Court, E.D. Pennsylvania.

Nov. 27, 1991.

Catherine A. Sullivan, Berger & Montague, Philadelphia, Pa., Herbert E. Milstein, Cohen, Milstein, Hausfeld & Toll, Washington, D.C., Samuel D. Heins, Opperman, Heins & Paquin, Minneapolis, Minn., for Mortg. and Realty Trust.

M. Richard Komins, Gerald J. Rodos, Barrack, Rodos & Bacine, Philadelphia, Pa., Richard D. Greenfield, Greenfield & Chimicles, Haverford, Pa., for Richard Mandel.

Elizabeth H. Fay, Philadelphia, Pa., for Mortg. & Realty Trust, Edward L. Stanley, Victor H. Schesinger, and C.W. Strong, Jr.

William T. Hangley, Hangley Connolly Epstein Chicco Foxman & Ewing, Philadelphia, Pa., for Edward L. Stanley, Victor H. Schesinger, and C.W. Strong, Jr.

## MEMORANDUM AND ORDER

BARTLE, District Judge.

This is a shareholder derivative action. Martha Davidsohn and Martha Wade ("Plaintiffs") are shareholders in Mortgage and Realty Trust ("Mortgage"), a Real Estate Investment Trust ("REIT") which was organized under Maryland law. Plaintiffs filed the Complaint pursuant to Federal Rule of Civil Procedure 23.1, the rule which deals with derivative actions by shareholders. The nine members of the Board of Trustees of Mortgage ("Trustees") are the defendants in the action. Only one of the nine Trustees is an inside trustee.

Plaintiffs allege that the Trustees have committed various "grossly negligent" acts which violated their fiduciary duty to Mortgage, including:

(1) "[T]he Trustee Defendants violated their fiduciary duty to Mortgage by their gross negligence in the management and supervision of the business of Mortgage and by their mismanagement and failure to conform their conduct to the standard of care and diligence required of them as trustees of Mortgage.

(2) "Trustee Defendants' breaches of their fiduciary duty by their gross negligence arose, in part, from their imprudent and reckless reliance upon the availability, on an ongoing basis, of short-term funding at economically feasible rates of interest.... Mortgage was, therefore, over-dependent upon the availability of short-term funds.

(3) "The Trustee Defendants, by approving this over-dependence on short-term funding, were grossly negligent and exposed Mortgage to the unreasonable risk that its intermediate and longer term loans could not be funded on an economically viable basis by short-term funding.

(4) "The Trustee Defendants' breaches of their fiduciary duty, and gross negligence, as set forth above, involved not only assumption of unreasonable, reckless levels of risk inherent in dependence upon excessive short-term borrowing but, in addition, involved risks inherent in assumptions concerning pre-payments and re-payments of loans. In particular, Trustee Defendants were grossly negligent in their unreasonable and reckless reliance upon critical cash flow assumptions concerning the rate at which outstanding loans would be paid off prior to the stated maturity dates....

(5) "Trustee Defendants were also grossly negligent and consequently breached their fiduciary duty to Mortgage by imprudently deciding to forego the benefits of securing a lead bank among the thirteen banks from which it borrowed.

(6) "Trustee Defendants compounded their violation of their fiduciary duty by making new commitments for intermediate and long-term loan assets requiring ongoing reliance on short-term funds of an order of magnitude, and at a rate, grossly negligent under the circumstances.

(7) "Trustee Defendants' gross negligence was further compounded by their failure to protest the credit ratings assigned Mortgage....

(8) "All or some of the Trustee Defendants benefitted directly from the wrongful conduct in the form of remu-

**86**

neration which was based on the level of profits...."

The Complaint, ¶¶ 25–38. Plaintiffs also allege that, as a result of the misconduct of Mortgage's Trustees, Standard & Poor's Corporation dropped Mortgage's credit rating with severe adverse consequences for Mortgage. Plaintiffs have not alleged fraudulent misconduct on the part of Trustees with respect to these transactions or events.

The Trustees have filed a motion to dismiss the Complaint. They argue that Plaintiffs have failed to comply with the requirements of Rule 23.1 because (1) the Plaintiffs have not demanded that the Trustees take action to obtain the remedies sought in the Complaint, and (2) the Plaintiffs have not alleged, with particularity, the reasons for their failure to obtain Trustees' action, or the reasons why a demand for action would have been futile.

It is a basic principle that decisions concerning the operation or governance of a corporation or unincorporated association, including the decision to litigate, should be made by the entity's governing board or by the majority of its shareholders or members. *Kamen v. Kemper Financial Services, Inc.,* — U.S. ——, 111 S.Ct. 1711, 1719, 114 L.Ed.2d 152 (1991), citing *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, at 530, 104 S.Ct. 831, at 835, 78 L.Ed.2d 645. One exception to this basic principle is a shareholders' derivative action, an action which is "brought by one or more shareholders or members to enforce a right of ... an unincorporated association" because the association has failed to enforce a right which it could have properly asserted. Rule 23.1.

The specific steps which must be followed in order to institute a derivative action are set out in Rule 23.1 of the Federal Rules of Civil Procedure. Under that Rule, the Complaint must

"allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members and the reasons for the plain-

tiff's failure to obtain the actions...." Rule 23.1

The "efforts" of which the Rule speaks are referred to by the parties as the "demand."

If the Complaint does not allege any demand, it must allege "with particularity" facts that such a demand would have been futile in order for the derivative suit to go forward, and to be in compliance with Rule 23.1. *Cramer v. General Telephone and Electric Corp.,* 582 F.2d 259, 276 (3d Cir. 1978), *cert. denied,* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979).

■ It is now settled that the law of the state of organization governs whether a demand must be made upon the Trustees or directors prior to the institution of a derivative action, or whether such a demand is excused because it would be futile. In *Kamen v. Kemper Financial Services, Inc.,* — U.S. ——, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), involving a Maryland corporation, the Supreme Court held:

The scope of the demand requirement under state law clearly regulates the allocation of corporate governing powers between the directors and individual shareholders.... a court that is entertaining a derivative action under the statute must apply the demand futility exception as it is defined by the law of the State of incorporation.

*Kamen v. Kemper Financial Services, Inc.,* — U.S. ——, 111 S.Ct. 1711, 1723, 114 L.Ed.2d 152 (1991).

In the present case, the Plaintiffs acknowledge in their Complaint that they have not made a demand upon the Trustees. Rather, the Plaintiffs assert that the demand is excused because such a demand would have been futile. Since Mortgage is organized under the laws of the state of Maryland, this Court must therefore look to Maryland law to determine whether a demand on the Trustees is excused by any futility exception under the circumstances of this case. *Kamen v. Kemper Financial Services, Inc.,* — U.S. ——, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

■ Under Maryland law a shareholder or member generally may not institute a

derivative action before making a demand upon the directors or Trustees that the corporation or association itself commence the action. However, Maryland does recognize an exception to the demand requirement where such a demand would be futile. *Parish v. Maryland & Virginia Milk Producers Association,* 250 Md. 24, 242 A.2d 512 (1968); *cert. denied,* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971).

Plaintiffs first argue that a demand would have been futile in this case because all of the Trustees of Mortgage have been named as defendants. They also contend that they are excused from making a demand because the Trustees have breached their fiduciary duty to Mortgage by acting in a "grossly negligent" fashion.

■ Under Maryland law, the mere naming of all of the Trustees as defendants does not excuse a demand. Although not squarely confronted with this issue, the opinion of the Maryland state Court of Appeals in *Parish* suggests that Maryland courts would arrive at this conclusion. Otherwise, all a plaintiff would need to do to avoid a demand would be to sue all or a majority of the governing board. Common sense dictates that Maryland would not interpret the futility exception so broadly as effectively to eliminate the demand requirement. In *Grill v. Hoblitzell,* 771 F.Supp. 709 (D.Md.1991), considering the very same issue, the Court stated:

> [P]laintiff contends that because he has charged all of the directors of MNC with dereliction of duty, he is excused from making any demand upon them. Plaintiff's position is overly simplistic. As he himself urges, Maryland law requires a "practical" and "common sense" inquiry into the issue of whether a demand upon directors (and shareholders) would be futile. Common sense dictates that this inquiry cannot begin and end with a mere conclusory allegation that the directors have been guilty of misconduct. If that were all that were required, the

futility exception would swallow the demand rule. (Citations omitted.) [1]
*Grill* at 711–12.

Maryland applies the business judgment rule when considering the viability of stockholder derivative suits brought on behalf of the corporation at the request of a minority stockholder or member:

> It is well established that courts generally will not interfere with the internal management of a corporation at the request of a minority stockholder or a member. The conduct of the corporation's affairs are placed in the hands of the board of directors and if the majority of the board properly exercises its business judgment, the directors are not ordinarily liable. This sound general rule, however, is subject to the important exception that directors will be held liable if they permit the funds of the corporation or the corporate property to be lost or wasted by their gross or culpable negligence.

*Parish,* 242 A.2d at 540–41. In *Kamen v. Kemper Financial Services, Inc.,* 939 F.2d 458, 461 (7th Cir.1991), a stockholders' derivative action on remand from the Supreme Court, the Court of Appeals of the Seventh Circuit analyzed the Complaint in that case to determine whether the plaintiff's demand would have been futile under Maryland law. The Court stated:

> [U]nless there is good reason to doubt that the directors' acts are protected by the business judgment rule, a disgruntled investor must ask the directors to act.

The *Kamen* Court added:

> We think it likely, then, that if Maryland does not abolish the futility exception, it will cast its lot with the states that require demand on directors who face no substantial risk of personal liability.

*Kamen* at 462.

■ The Court here has reviewed Plaintiffs' Complaint in detail. Nothing alleged

**1.** Plaintiffs have argued that Maryland law does excuse demand in cases where the complaint has named all directors as defendants. They rely heavily on dicta in the case of *Burt on Behalf of McDonnell Douglas v. Danforth,* 742 F.Supp. 1043 (E.D.Mo.1990), a Missouri case interpreting Maryland law. This view is in conflict with, and unsupported by, the Maryland Court of Appeals decision in *Parish.* We believe that the *Grill* decision contains the better reasoning.

in the Complaint gives this Court "good reason" to doubt that the acts of the Trustees in this case are protected by the business judgment rule. Moreover, from the factual allegations in the Complaint, we cannot conclude that the Trustees face "substantial risk of personal liability."

■ Under Maryland law, gross negligence on the part of the Trustees would obviate the need for a demand. *Parish,* 242 A.2d at 540. However, merely sprinkling the conclusory words "gross negligence" throughout the Complaint does not save the Plaintiffs from the demand requirement. If we were to allow this talisman, then all a plaintiff in a derivative action would have to do would be to pen the words "gross negligence" to avoid making a demand on the directors or Trustees. The Maryland business judgment rule and the policies behind it would then be a thing of the past.

It must be emphasized that in a shareholders' derivative action the allegations in the complaint must be pleaded with particularity. This requirement exists under Rule 23.1 precisely to avoid making the demand requirement a nullity. *Allison on Behalf of G.M.C. v. General Motors Corp.,* 604 F.Supp. 1106, 1112 (D.Del.1985), *aff'd mem.,* 782 F.2d 1026 (3d Cir.1985).

In the present case, Plaintiffs allege gross negligence on the part of the Trustees in carrying out their fiduciary duty to Mortgage. However, the allegations of gross negligence are conclusory. To the extent that specific acts are alleged, they amount on their face to nothing more than negligent corporate mismanagement. The allegations, fairly summarized, amount to the assertions that the Trustees allowed or participated in faulty lending and borrowing practices.

In addition, there are no allegations of fraud or self-dealing among the Trustees except one paragraph of the Complaint which asserts, in conclusory fashion, that all or some of the Trustees "benefitted directly from the wrongful conduct in the form of remuneration which was based on the level of profits [of Mortgage] including the substantial profits from the wrongful conduct." (Complaint, ¶ 38). This allegation is not supported in the Complaint with any particularity whatever and thus fails to meet the requirements of Rule 23.1.

Maryland courts have found that parties were guilty of gross negligence in situations involving a trustee's or director's self-dealing or where there existed conflict of interest on the part of the trustees, or where trustees knowingly allowed officers' self-dealing, or fraudulently concealed causes of action from the stockholders. *Parish,* 242 A.2d at 540–541. The allegations of wrongdoing in the Plaintiffs' Complaint do not rise to this level.

■ Finally, Plaintiffs have sought to establish futility retroactively by alleging that after Plaintiffs filed their Complaint, Mortgage sought permanently to abate the derivative claims. As the Circuit Court in *Kamen* stated, the Plaintiffs have confused opposition with futility. *Kamen* at 462. Simply because the Trustees have opposed Plaintiffs' claims does not establish that the claims have any merit or should be permitted to be instituted here without a demand. Trustees acting in the best interest of a corporation or other entity have a duty to oppose weak claims.

> Directors will (and should) oppose weak claims. If that opposition eliminated the need for demand, we would reach the curious pass that claims so weak that they should not be pursued at all could go straight to court, while claims strong enough to litigate about should be presented to the directors.

*Kamen* at 462.

Thus, to equate opposition with futility would lead to the illogical result that plaintiffs could avoid the demand requirement simply by virtue of the weakness of their claims.

For these reasons, the Defendants' motion to dismiss the Complaint will be granted.