**In re WESTINGHOUSE SECURITIES LITIGATION.**

**This Order Relates to the Derivative Action.**

**Civ. A. Nos. 91–354, 91–624.**

United States District Court, W.D. Pennsylvania.

July 27, 1993.

Howard A. Specter, George C. Mahfood, Pittsburgh, PA, Michael Malakoff, Malakoff Doyle & Finberg, Pittsburgh, PA, Alfred G. Yates, Pittsburgh, PA, Jules Brody, Melissa R. Emert, Stull Stull & Brody, New York

City, Arthur N. Abbey, Joshua N. Rubin, New York City, for plaintiffs.

Joseph A. Katarincic, Terrance J. O'Rourke, Pittsburgh, PA, Dennis J. Block, Weil Gotshal & Manges, New York City, for defendants Paul E. Lego and William A. Powe.

Mark C. Rifkin, Richard D. Greenfield & Partners, Haverford, PA, Lead counsel for plaintiffs in the Derivative Action.

Leonard Fornelia, Polito & Smock, Pittsburgh, PA, for Nominal defendant Westinghouse Corp.

J. Thomlinson Fort, Reed Smith Shaw & McClay, Pittsburgh, PA, Robert Zimet, Skadden Arps Slate Meager & Flom, New York City, for underwriter defendants.

James D. Morton, Arthur J. Schwab, Buchanan Ingersoll, Pittsburgh, PA, Emily Nicklin, Kirkland & Ellis, Chicago, IL, for defendant Price Waterhouse.

William F. Stoll, Jr., Westinghouse Elec. Corp., Pittsburgh, PA, Westinghouse Elec. Corp. Law Dept.

### OPINION AND ORDER

D. BROOKS SMITH, District Judge.

### I. INTRODUCTION

Plaintiffs Joseph H. Levit and George M.D. Richards (the derivative plaintiffs) bring this action individually and derivatively on behalf of Westinghouse Electric Corporation against nominal defendant Westinghouse Electric Corporation, and thirteen individual defendants who sat on the Board of Directors of Westinghouse or one of its subsidiaries at times relevant to this action. Plaintiffs allege that defendants issued materially false and misleading proxy statements from 1987 through 1992, in violation of Section 14(a) of the Exchange Act and Rule 14a–9 promulgated thereunder by the SEC (Counts I and II), and that the individual defendants breached their state law fiduciary duties to Westinghouse and its shareholders by committing

gross mismanagement and wasting corporate assets (Count IV). Finally, plaintiffs allege that the individual defendants may have violated federal securities laws by failing to disclose material facts in connection with the sale of Westinghouse securities, and should be liable to the corporation for contribution or indemnity in connection with any judgment or settlement of the Purchaser Class Actions (Count III).

### II. DISCUSSION

#### A. Demand Futility

 Defendants first argue that the derivative portions of plaintiffs' complaint (Counts II, III and IV) should be dismissed because plaintiffs have not made pre-litigation demands on Westinghouse's Board of Directors and Westinghouse shareholders, and have not pled particularized facts excusing the demand requirement, as required by Fed.R.Civ.P. 23.1.[1] Defendants' Memorandum in Support of Motion to Dismiss Amended and Supplemental Derivative Complaint (Defendants' Memo), at 7–25. As the Supreme Court noted in *Kamen v. Kemper Financial Services*, 500 U.S. 90, ——, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152, 164 (1991), Rule 23.1 "contemplates" but does "not create" the requirement that shareholders make a demand upon the corporate directors before bringing derivative actions on behalf of the corporation. It is a procedural rule that "speaks only to the adequacy of the shareholder representative's pleadings." *Id.* The demand requirement itself is substantive; it is a principle of states' corporate law. The requirement is based upon, and is an essential part of, the allocation of governing powers within a corporation. Its major premise is that directors of corporations are best positioned to determine whether prosecuting a lawsuit is in the corporation's best interest, and that their judgment on that matter should generally be accorded deference. *See Kamen*, 500 U.S. at ——, 111 S.Ct. at 1719, 114 L.Ed.2d at 167 ("The purpose of requir-

---

**1.** Rule 23.1 provides in pertinent part: "The [shareholder derivative action] complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort."

ing a precomplaint demand is to protect the directors' prerogative to take over the litigation or to oppose it."); *Cramer v. Gen. Tel. & Elec. Corp.*, 582 F.2d 259, 274–5 (3d Cir. 1978), *cert. denied* 439 U.S. 1129, 99 S.Ct. 1048, 59 L.Ed.2d 90 (1979) (demand requirement is "inextricably linked" to the business judgment rule). However, the demand requirement is not absolute; it must not be permitted to defeat the important role derivative actions serve in overcoming collective action barriers where managers or directors who are allegedly intent on serving their own interests rather than those of the firm refuse to sue themselves or others on behalf of the corporation. *Id. See generally* Jonathan R. Macey and Geoffrey P. Miller, *The Plaintiffs' Attorneys' Role in Class Action and Derivative Litigation: Economic Analysis and Recommendations for Reform*, 58 U.Chi. L.Rev. 1, 8–11 (1991). To balance these competing interests, courts permit shareholders to proceed derivatively if they can first show that making a demand upon the board would be futile. *Kamen*, 500 U.S. at ——, 111 S.Ct. at 1716, 114 L.Ed.2d at 165.

█ It is undisputed that plaintiffs did not make a prelitigation demand on the Westinghouse Board of Directors. Therefore, plaintiffs must "plead with particularity" the reasons why they did not make such demands. Accordingly, plaintiffs argue that under the circumstances, it would have been futile to demand that the Westinghouse Board of Directors litigate this action against the corporation.

The parties agree that Pennsylvania law, supplemented by relevant Delaware case to the extent it is necessary, provides the substance of the demand requirement in the case at bar. Pennsylvania's demand requirement, 42 Pa.C.S.A. § 1506(a)(2), provides that a derivative plaintiff must "set forth the efforts made to secure enforcement by the corporation or similar entity or the reason for not making any such efforts." Pennsylvania courts have traditionally been aggressive in enforcing the demand requirement. In *Wolf v. Pennsylvania R. Co.*, 195 Pa. 91, 45 A. 936 (1900), the Pennsylvania Supreme Court held that making a demand "upon the regular corporate management" was an "im-

perative requisite[ ]." *Id. See also Law v. Fuller*, 217 Pa. 439, 66 A. 754, 756 (1907) (in order to satisfy the demand requirement, a derivative plaintiff "should allege its refusal or failure to sue, and facts showing that he has left undone nothing which in reason he might have done to prevail on the corporate management to bring the action."). The Court in *Law v. Fuller* acknowledged a futility exception, but rejected plaintiff's contention that the exception obtained because their argument did

> not rest on any acts averred, but [rather] on an inference that, by reason of the circumstances of their election, the directors will violate their duty and commit a breach of trust. There is, however, no presumption that officers will commit a breach of trust. The charge should rest on some act, affirmative or permissive, manifestly in violation of duty, and manifestly the result of fraud, and not of erroneous judgment.

*Id.* 45 A. at 937.

Similarly, in *Evans v. Diamond Alkali Co.*, 315 Pa. 335, 172 A. 678 (1934), the Supreme Court of Pennsylvania taught with respect to demand futility:

> Where it appears that fraudulent acts prejudicial to the interests of the corporation have been committed, so interwoven with the conduct of the corporate managers and of such nature that it might be presumed that the officers would commit a breach of trust in refusing to proceed, a demand is not necessary and it would be 'vain and useless.' Ordinarily there is no presumption that officers will commit such breach of trust, and the charge that they will should rest on acts, affirmatively or permissive, duly averred, manifestly in violation of duty, and manifestly the result of fraud, and not of erroneous judgment. It is not always necessary for the complaining shareholder to appeal to stockholders at a meeting, but he is in duty bound to make every reasonable effort to prevail on the corporate management to bring action.

*Id.* at 679 (citations omitted). *Accord Passmore v. Allentown & Reading Traction Co.*, 267 Pa. 356, 110 A. 240 (1920); *Kelly v. Thomas*, 234 Pa. 419, 83 A. 307 (1912); *Bur-*

*don v. Erskine,* 264 Pa.Super. 584, 401 A.2d 369 (1979).

Federal courts applying Pennsylvania's law of demand futility have been equally resistant to excuse shareholders from making demands based upon insufficiently specific allegations of futility. In *Cramer,* 582 F.2d at 275, the United States Court of Appeals for the Third Circuit acknowledged that "courts have some limited power to review the reasonableness of the directors' judgment that a derivative suit is not in the best interests of the corporation," but rejected the plaintiff's claim of futility. The plaintiff shareholder was unable to explain *why* the board of directors was wrongfully and unalterably opposed to prosecuting a lawsuit against the corporation, or how the board was dominated by directors who had been involved in allegedly fraudulent activities. Without a particularized pleading of facts from the shareholder plaintiff explaining why demand should be excused, the court declined to infer demand futility.

In *Lewis v. Curtis,* 671 F.2d 779 (3d Cir.), *cert. denied* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982), the Third Circuit stated that "[c]ourts will excuse the derivative plaintiff from the demand requirement when his complaint alleges that a majority of the directors have participated in the underlying wrongdoing or that the board is controlled by the alleged wrongdoers." *Id.* at 784. Demand will not be excused merely because a majority of the directors are named in the complaint, or because the directors would have to sue themselves. *Id.* at 785. *Cf.* Amended and Supplemental Complaint ¶ 110(d) and (e). Nor will the fact that the directors approved an allegedly injurious corporate transaction, or conclusory allegations of director wrongdoing, give rise to an inference of futility. *Id.* However, "when a complaint alleges ... that all the directors participated in and approved of a self-interested transaction, and sets forth in detail facts showing that the directors are indeed interested, any demand must be presumed futile." *Id.* at 787. In *Lewis,* the court determined that the shareholder plaintiff had met his burden of pleading futility when he alleged with particularity a plan by the defendant directors to pay with corporate funds a cor-

porate raider who was attempting by proxy contest to obtain a seat on the company's board of directors. The plaintiff alleged that the directors had engaged in an elaborate scheme to maintain and consolidate their control of the board of directors, including the use of long-term employment contracts, an amendment to the company's certificate of incorporation requiring a super-majority affirmative vote to authorize certain transactions with large-bloc shareholders, and an amendment to the corporate By-Laws reducing the number of directors from twelve to eight. *Id.* at 784.

Demand will be excused where the plaintiff states with particularity allegations of participation, self-dealing, bias, bad faith or corrupt motive, *Recchion v. Kirby,* 637 F.Supp. 1309, 1320 (W.D.Pa.1986), such as an allegation that a majority of the defendant directors are insiders who have depleted and misappropriated corporate assets for their own personal gain, *see Vanderbilt v. Geo-Energy Ltd.,* 590 F.Supp. 999 (E.D.Pa.1984). Simply averring that directors approved the challenged transaction, *see Recchion v. Kirby,* 637 F.Supp. at 1321, or characterizing that decision as "gross negligence," *see In re Mortgage and Realty Trust Sec. Lit.,* 787 F.Supp. 84, 88 (E.D.Pa.1991) (applying Maryland law), does not excuse the plaintiff from making a demand.

Finally, it should be noted that the leading case on demand futility outside Pennsylvania, *Aronson v. Lewis,* 473 A.2d 805 (Del. Supr.1984), teaches that demand should be excused when, "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 814. The *Aronson* court defined disinterest as a situation where "directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Id.* at 812.

Instantly, plaintiffs' complaint is devoid of particular factual allegations that

establish a lack of disinterest or independence. Notably absent from plaintiffs' Amended and Supplemental Complaint are particular factual allegations of systematic efforts by the defendant directors to benefit at the expense of Westinghouse shareholders by self-dealing, depletion of corporate assets, employing egregious entrenchment tactics, or by standing on two sides of the same transaction, all of which represent allegations sufficient to excuse demand as determined by the courts in *Lewis, Vanderbilt*, and contemplated by the *Aronson* court. Accepting plaintiffs' allegations as true, the defendant directors benefitted only by gaining director status, along with the ordinary director fees that directors typically receive. Unless extraordinary and lavish, the perquisites that accompany directorships will not excuse demand. *See Litman v. Prudential–Bache Properties, Inc.*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 97,313 at 95,583, 1993 WL 5922 (Del. Ch. January 4, 1993) (citing *Grobow v. Perot*, 526 A.2d 914 (Del.Ch.1987), *aff'd* 539 A.2d 180 (1988)). The fact that the individual directors had an "economic *incentive* to inflate artificially the common stock price," Plaintiffs' Memorandum in Opposition to Motion to Dismiss Amended and Supplemental Derivative Complaint (Plaintiff's Memo) at 56–7 (emphasis added), or that the directors solicited proxy votes in favor of adopting "raincoat provisions" despite a *potential* conflict of interest between directors and other shareholders, *id.* at 54–56, is likewise insufficient to establish demand futility, for the derivative plaintiff must allege an *actual* conflict. *Litman*, [Current] Fed.Sec.L.Rep. (CCH) ¶ 97,313 at 95,583.

■ Nor does the fact that Westinghouse's directors' and officers' insurance policy denies coverage for claims brought by a Westinghouse shareholder, a standard exclusion in such policies, *ipso facto* make the defendant directors "interested" with respect to litigation demands. Amended and Supplemental Complaint ¶ 110(f). As the court noted in *Stoner v. Walsh*, 772 F.Supp. 790, 805 (S.D.N.Y.1991), such a rule would "preclude rejection of a demand whenever the standard exclusion exists."

■ Under *Aronson* and its progeny, when the derivative plaintiff fails to raise an inference of director interestedness, a rebuttable presumption arises that defendants' actions are protected by the business judgment rule. *See Blasband v. Rales*, 971 F.2d 1034, 1052 (3d Cir.1992). But how can a shareholder be expected to refute the presumption that a challenged transaction was "the product of a valid exercise of business judgment," *Aronson*, 473 A.2d at 814, when the challenged transaction itself is not a business decision, *per se*, but the preparation of allegedly false and misleading proxy statements? Most cases discussing the relationship between federal securities laws and the business judgment rule have involved decisions of corporate "investigation committees," composed of independent directors, not to pursue, or to seek dismissal of, shareholder derivative actions. In that context, the directors' decisions are generally not deemed inconsistent with the federal securities law grounding the shareholders' cause of action, and have usually been granted protection by the business judgment rule. *See e.g., Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979); *Lewis v. Anderson*, 615 F.2d 778 (9th Cir.1979), *cert. denied* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980); *Abbey v. Control Data Corp.*, 603 F.2d 724 (8th Cir.1979), *cert. denied* 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980); *Genzer v. Cunningham*, 498 F.Supp. 682 (E.D.Mich. 1980).

■ *Burks* teaches that courts should presume that state law, the source of most corporate law and a background for congressional legislation, governs judicial review of directors' challenged actions. *Burks*, 441 U.S. at 478, 99 S.Ct. at 1837. However, federal courts must be on guard against state law threats to "any identifiable federal policy or interest," *id.* at 479, 99 S.Ct. at 1838, and should apply state corporate law only where it is consistent with federal securities law. *Id.* at 480, 99 S.Ct. at 1838.

■ Applying these principles from *Burks*, it is clear that where a plaintiff challenges not a decision to terminate an action alleging violation of federal securities laws, but the alleged willful violation *itself* of feder-

al securities laws, business judgment analysis is inapplicable. This is so because the duty to make full and fair disclosure is independent of the duty to exercise reasonable care and prudence in the management of corporate affairs, and the decision whether or not to violate securities laws, unlike the decision whether to pursue litigation on behalf of the corporation, is not one reserved exclusively to the directors.

■ Misapplying the business judgment rule to a pure allegation of securities fraud under Section 14(a) would emasculate the federal policy of "prevent[ing] management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation," *J.I. Case v. Borak,* 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964), and render the statute a nullity. As the United States Court of Appeals for the Sixth Circuit recognized in *In re General Tire & Rubber Co. Securities Litigation,* 726 F.2d 1075, 1082 (6th Cir.), *cert. denied* 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984): "In many instances, derivative actions are the only means of private redress for a § 14(a) violation. Summary dismissal of those cases 'would be tantamount to denying a type of enforcement that is essential to the accomplishment of the goals of § 14(a).'" (citation omitted). *See also Miller v. American Telephone & Telegraph Co.,* 507 F.2d 759, 762 (3d Cir.1974) (business judgment does not insulate directors from liability attending willful violation of federal statute); *Wolf v. Frank,* 477 F.2d 467, 477 (5th Cir.), *cert. denied* 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973) (director's violation of SEC Rule 10b–5 not protected by business judgment rule so as not to "emasculate the policies of the federal securities laws"); *In re Anderson, Clayton Litigation,* 519 A.2d 669, 675 (Del.Ch.1986). Accordingly, the *Aronson* presumption that the business judgment rule cloaks the directors' challenged actions does not arise, and regardless of their independence, demand is excused with respect to Count II, the derivative claim based upon allegations of securities fraud.

■ The second prong of the *Aronson* test does apply, however, to Counts III and IV, the state law claims for indemnity and for breach of fiduciary duty. The business judgment rule is perfectly fitted to such claims and does not threaten any federal disclosure policy or statute. Plaintiffs challenge the individual defendants' monitoring practices by alleging a failure to establish adequate internal controls, and that defendants used the proxy solicitation process for allegedly improper purposes, which plaintiffs contend was a waste of corporate assets.

■ The business judgment rule protects directors from liability for honest mistakes of judgment. *Lewis v. Curtis,* 671 F.2d 779, 786 (3d Cir.), *cert. denied* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). Plaintiffs do not allege that the individual defendants' failed to establish sufficient controls with fraudulent intent, or that they stood to gain personally from inadequate internal controls. Instead, plaintiffs point to the fact that Westinghouse: (1) unlike commercial lending institutions, did not develop a formalized loan loss review committee (which is *not* an allegation that no one at Westinghouse was monitoring loans); (2) used inconsistent cash flow models to estimate the value of loans; and (3) relied solely upon internal valuations rather than periodically comparing internal valuations to independent appraisals. All of these management failures allegedly contributed to the making of specific the loans which subsequently had to be written off. Amended and Supplemental Complaint (Complaint) ¶¶ 29–54.

■ It is easy to look back, as plaintiffs do, five years after the fact, declare that defendants have made a mess of things, and allege that defendants' actions "constitute[d] gross mismanagement", Complaint ¶ 107. Indeed, from this vantage point, some of defendants' practices could fairly be described as mismanagement. But overcoming the presumption of the business judgment rule requires more than alleging a discrepancy between previous representations made or expectations held and subsequent results; it certainly requires more than alleging mismanagement. Without specific allegations describing how the directors acted with bad faith, *see Cramer,* 582 F.2d 259, 274 (3d

Cir.1978) ("Absent bad faith or some other corrupt motive, directors are normally not liable to the corporation for mistakes of judgment, whether those mistakes are classified as mistakes of fact or mistakes of law"), the Court will not second guess those who are presumed better able to make decisions related to the daily operation of the business.

■ Plaintiffs' allegations of mismanagement do not establish demand futility, with respect to Counts III and IV, under the standards of Pennsylvania law and *Aronson.* Nor will the allegation at Complaint ¶ 106, that the individual defendants "wasted the [Westinghouse Corporation's] assets by using the proxy solicitation process ... illegally and improper[ly]," excuse demand. That allegation merely restates, and is dependent upon the success of, plaintiffs' Section 14(a) claims in Counts I and II, for using the proxy solicitation process as plaintiffs allege the individual defendants did can only be improper in conjunction with a determination that the proxy statements were materially false and misleading, in violation of the statute. Similarly, plaintiffs' conclusory statements at Complaint ¶¶ 101–04 that the individual defendants are liable to the corporation for contribution in connection with the purchaser class action, besides lacking ripeness, are not accompanied by particularized facts supporting demand futility. Counts III and IV will be dismissed.

### B. *Statute of Limitations*

■ The United States Court of Appeals' for the Third Circuit recently held in *Westinghouse Elec. Corp. v. Franklin,* 993 F.2d 349 (3d Cir.1993), that the uniform federal limitations period for actions brought under Section 10(b) of the Exchange Act, pursuant to which plaintiffs must bring securities claims actions within one year of the time they discover the alleged fraud, and no later than three years of the securities law violation itself, also applies to actions brought under Section 14(a) of the Exchange Act.

Therefore, plaintiffs' Section 14(a) claim based upon an allegedly false and misleading 1987 proxy statement is time-barred.

■ Westinghouse issued its 1988 proxy statement on March 14, 1988. It is undisputed that the appropriate date for measuring the start of the uniform federal limitations period is April 12, 1991, which is when plaintiff Joselow originally filed his Section 14(a) claim. The claims of the instant derivative plaintiffs, who share an identity of interest with Mr. Joselow, relate back under Fed.R.Civ.P. 15(c)(2) to the date of the original pleading. Defendants contend that plaintiffs' claim based upon the allegedly false and misleading 1988 proxy statement is also time-barred, since Mr. Joselow did not bring his claim by March 14, 1991, three years after the proxy statement was issued. Plaintiffs argue that defendants had a continuing duty to correct previously disclosed incorrect information, which duty extended "at least until the annual meeting of shareholders [was] held," on April 27, 1988. Plaintiffs' Memorandum at 46 n. 29. If plaintiffs are correct, their claim based upon the 1988 proxy statement is not time-barred, since Joselow filed his action prior to April 27, 1991.

■ An issuer violates Section 14(a) by using a proxy statement or other communication containing false or misleading statements of material fact to solicit a proxy. The violation occurs when the false or misleading proxy statement is issued. *See Stull v. Bayard,* 561 F.2d 429, 432 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978) (Section 14 of the Exchange Act violated when an issuer "muddie[s] the pool of information accessible to [it's] shareholders" by making a false or misleading disclosure); *Levinger v. Shepard Niles Crane & Hoist Corp.,* 616 F.Supp. 21, 23 (W.D.N.Y.1985). The continuing duty to disclose, as discussed in the cases cited by Plaintiffs' Memorandum at note 29 and codified at 17 C.F.R. § 240.14a–9,[2] applies to

---

2. The SEC Regulation imposing a continuing duty to disclose on issuers reads in pertinent part:

No solicitation subject to this regulation shall be made by means of any proxy statement,

form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any materi-

issuers who discover, subsequent to an earlier disclosure, that their disclosure is false or misleading. Such issuers are under an obligation to correct the earlier statements prior to the consummation of the transaction that was the subject of the false disclosure. *See Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 205 n. 13 (5th Cir.), *cert. denied* 488 U.S. 926, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988) (continuing duty to disclose obtains when "subsequent events" make earlier statements inaccurate, or when those statements are "later discovered" to have been false or misleading from the outset). An allegedly false or misleading statement is made at a particular point in time; the continuing duty to disclose does not somehow extend the making of such statements—a matter of discrete historical fact—beyond the date of issuance to a later point in time. Accordingly, plaintiffs' Section 14(a) claim based on Westinghouse's 1988 proxy statement is also time-barred by the three year statute of limitations.

What remains of plaintiffs' Amended and Supplemental Derivative Complaint are Counts I and II, claims made pursuant to Section 14(a) of the Exchange Act and SEC Rule 14a–9 based upon Westinghouse's 1989–92 proxy statements.

### C. *The Section 14(a) Claim*

 To establish a cause of action for violation of Rule 14a–9, plaintiffs must demonstrate that: (1) Westinghouse's proxy statements contained false or misleading statements of material fact, or omitted to state a material fact necessary in order to make the statements factually accurate; (2) the misstatement or omission of material fact was made knowingly, recklessly, or negligently, *see Herskowitz v. Nutri/System, Inc.,* 857 F.2d 179, 190 (3d Cir.1988), *cert. denied* 489 U.S. 1054, 109 S.Ct. 1315, 103 L.Ed.2d 584 (1989); and (3) the proxy solicitation itself was an "essential link" in accomplishing the proposed corporate transaction. *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970). Be-

cause plaintiffs do not allege that the transaction solicited by Westinghouse's proxy materials (i.e., the directors' elections and re-elections) directly caused a financial loss to the corporation, no claim for money damages exists. *See Gen. Elec. Co. v. Cathcart,* 1992 WL 68328 (E.D.Pa.1992). Plaintiffs' claim is therefore one for equitable relief, specifically, voiding the elections of the directors.

As the proxy statements at issue indicate, Westinghouse directors are elected for three year terms. *See* 1989 Proxy Statement at 2; 1990 Proxy Statement at 2; 1991 Proxy Statement at 2; 1992 Proxy Statement at 2 (Plaintiffs' Request for Judicial Notice Exhibits C–F). The terms of all directors elected in 1989 and 1990 have therefore expired, and plaintiffs' claims with respect to those years' elections are moot. Accordingly, plaintiffs' Section 14(a) claims based upon the 1989 and 1990 proxy statements will be dismissed with prejudice. *See Browning Debenture Holders' Comm. v. DASA Corp.,* 524 F.2d 811, 816–17 (2d Cir.1975); *CNW Corp. v. Japonica Partners, L.P.,* 776 F.Supp. 864, 868 (D.Del.1990).

 At Complaint ¶ 80, plaintiffs allege that Westinghouse's 1991 proxy statement was false and misleading because of representations it made regarding Board committees, the qualifications of the individual defendants to serve on the Board committees, and descriptions of Board committee meetings and activities. And at Complaint ¶ 81, plaintiffs aver that statements made in Westinghouse's 1990 annual report were false and misleading because they attributed the company's business reversals to "external market factors" rather than to "the lack of an adequate internal control system" and "the individual defendants' failure to implement and maintain an adequate system of internal controls." As a proximate result of the dissemination of the 1990 annual report and 1991 proxy statement, plaintiffs were allegedly injured by the re-election of defendants Lego, McLaughlin and Pivirotto to the Board, and by shareholder approval of an employee

---

al fact, *or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication*

*with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.*

17 C.F.R. § 240.14a–9(a) (emphasis added).

stock plan that effectively increased the benefits of, *inter alia,* employees of WFSI and WCC. *See* Complaint ¶ 82. Similar allegations are made with respect to Westinghouse's 1992 proxy statement. Complaint ¶¶ 83–87.

■ These are pure allegations of mismanagement, and of failure to disclose mismanagement, almost identical to those dismissed in *Solfanelli v. Mainwaring,* 1992 WL 332223 (E.D.Pa.1992). Following *In re Craftmatic Securities Litigation v. Kraftsow,* 890 F.2d 628 (3d Cir.1989) and *Shapiro v. UJB Financial Corp.,* 964 F.2d 272 (3d Cir.), *cert. denied* — U.S. ——, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992), the *Solfanelli* court held that while the failure to disclose a company's poor financial condition is material, the failure to disclose managerial inadequacies leading to the poor financial condition is not actionable. Representations about director qualifications, the cause of economic woes, and the employment of internal controls are simply not grist for a Section 14 claim unless the plaintiff can show that defendants knew the statements to be false at the time they were made, or "acted with indifference to their falsity." *Hayes v. Gross,* 982 F.2d 104, 106–07 (3d Cir.1992). Plaintiffs' reliance on *Securities and Exchange Comm'n v. Falstaff Brewing Corp.,* 629 F.2d 62 (D.C.Cir.1980), *cert. denied* 449 U.S. 1012, 101 S.Ct. 569, 66 L.Ed.2d 471 (1980), is misplaced, for that case involved allegations that the defendants falsely represented the very *existence* of an audit committee. Instantly, plaintiffs do not dispute the existence of any Board committees; rather, plaintiffs challenge the qualifications of the directors sitting on the committees, and the rigor with which the committee members monitored, or should have monitored, Westinghouse's lending practices.

■ Plaintiffs also aver that the individual defendants misrepresented the adequacy of their monitoring practices, because "as has ultimately begun to become apparent over the course of time, Westinghouse's systems of internal control were woefully inadequate...." Complaint ¶ 90. But alleging that subsequent results contradict positive statements made earlier by a corporation, and "that the difference must be attributable

to fraud" is not the same thing as pleading with particularity circumstances constituting fraud. *See DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.), *cert. denied* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). The derivative plaintiffs have not alleged with requisite particularity that statements contained in the 1991 and 1992 proxy statements were fraudulently made.

■ Plaintiffs also may not bootstrap statements made in Westinghouse's 1990 and 1991 annual reports to their Rule 14a–9 claims. Liability does not attach to statements made in annual reports that only "accompany," or are "effectively" incorporated into proxy materials. Annual reports may only support a claim for violation of Rule 14a–9, which rule proscribes solicitation of a proxy by false and misleading *proxy statements,* when they are specifically incorporated by reference into the proxy statement. *Solfanelli,* 1992 WL 332223 at *3 (citing *Dillon v. Berg,* 326 F.Supp. 1214 (D.Del.1971), *aff'd,* 453 F.2d 876 (3d Cir.1971) ("no liability may be imposed under Federal proxy rules, other than 14a–3, for any false or misleading statement of material omission contained in the corporation's annual report")). Plaintiffs' Amended and Supplemental Complaint contains no claims for an alleged violation of Rule 14a–3. For the reasons enumerated in this section, Counts I and II, plaintiffs' Rule 14a–9 claims, will be dismissed.

■ Finally, because plaintiffs do not own more than 5 percent of the outstanding shares of any class of Westinghouse stock, or Westinghouse stock having a market value in excess of $200,000, defendants are within their rights to request that plaintiffs be required to post security. 15 Pa.C.S.A. § 1782. However, the amount of security that must be posted is (and continues to be in the event that one of the parties shows that the security provided has become inadequate or excessive) within the discretion of the Court. Neither plaintiffs' suggestion that the Court is constrained to require only a "nominal" bond, nor defendants' position that derivative plaintiffs must post as security the amount of all costs that defendants may incur in defending the action is supported by caselaw.

**1002**

The purpose of the security for costs statute is to prevent *de minimis* shareholders and "entrepreneurial attorneys" [3] from prosecuting derivative strike suits with the hope of extracting settlements or winning large attorney's fees " 'and with no intention of benefitting the corporation on behalf of which suit is theoretically brought.' " *Levine v. Bradlee*, 378 F.2d 620, 624 (3d Cir.1967) (citation omitted). The Court by no means considers this action a strike suit, and must avoid setting the security bond so high that legitimate derivative plaintiffs are prevented from maintaining their claims. Yet, defendants are statutorily entitled to require security for reasonable expenses, and the Court is cognizant of the costs involved in defending derivative actions of this magnitude. However, at this juncture, because all of plaintiffs' counts have been dismissed, there is technically no derivative action remaining to which the security requirement applies. Therefore, defendants' request for security will be denied. Defendants may of course raise the issue again in the event that plaintiffs file an amended complaint, move for reconsideration, or appeal from this memorandum opinion and order.

An appropriate order follows.

### ORDER

AND NOW, this 27th day of July, 1993, consistent with the foregoing Opinion, plaintiffs' Amended and Supplemental Derivative Complaint (Document No. 85) is dismissed. Counts Three and Four are dismissed with prejudice. Counts One and Two are dismissed without prejudice to repleading.

Plaintiffs' Second Amended Complaint shall be filed on or before August 20, 1993.

---

**3.** *See generally,* John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law* *Through Class and Derivative Actions,* 86 Colum.L.Rev. 669 (1986).