282 N.J. Super. 256 (1995)
659 A.2d 961
IN THE MATTER OF PRUDENTIAL INSURANCE COMPANY DERIVATIVE LITIGATION.
Superior Court of New Jersey, Chancery Division Essex County.
Decided February 10, 1995.
*260 Andrew R. Jacobs, Esq. (Fitzsimmons, Ringle & Jacobs, attorneys) Allyn Z. Lite, Esq. (Goldstein, Till & Lite, attorneys), Mary Boies, Esq. (Boies & McInnis, attorneys), Fred Isquith, Esq. (Wolf, Haldestein, Adler, Freeman & Herz, attorneys) and Mark Rifkin, Esq. (Greenfield & Rifkin, attorneys), for plaintiffs.
John M. Agnello, Esq., for defendant Brendan T. Byrne (Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, attorneys).
Charles A. Reid, III, Esq. (Shanley & Fisher, attorneys) and James Benkard, Esq. (Davis, Polk & Wardwell, attorneys) for defendant Prudential Insurance Co. and remaining individual defendants.

INTRODUCTION
Plaintiffs Richard Golebiowski and Louis Romano, Prudential Insurance Company (Prudential) policyholders, bring this derivative suit against: (1) the executives of Prudential Securities Incorporated *261 (PSI), a Prudential subsidiary; (2) certain Prudential executives; (3) the Prudential Board of Directors (also "the Board" or "the director defendants"); and (4) Prudential, as a nominal defendant. Plaintiff Romano additionally sues on behalf of a class of similarly situated policyholders.
The amended consolidated complaint claims breach of fiduciary duty (Count I); waste, mismanagement and gross negligence (Count II); intentional misrepresentation (Count III); and negligent misrepresentation (Count IV). The amended complaint alleges, among other things, improper sale of limited partnerships by PSI; improper involvement of Prudential insurance agents in the sale of these and other investments; and the overvaluation of real estate property in certain Prudential funds.
Pursuant to R. 4:6-2(e) and R. 4:32-5, defendants move to dismiss the derivative claims asserted in Counts I and II of the amended complaint for plaintiffs' failure to either make demand upon the Board of Directors or adequately plead why demand should be excused. In determining whether the amended complaint pleads demand futility with the requisite particularity, the court is called upon to interpret the scope of R. 4:32-5. R. 4:32-5 mandates that in a derivative action where the plaintiff has not made a demand upon the board of directors, the complaint shall set forth with particularity the reasons why demand is excused.

FACTUAL BACKGROUND

Procedural History
This action originated in two separate lawsuits: 1) Golebiowski v. Ball, ESX-L-16392-93 and 2) Romano v. Ball, ESX-L-16423-93, initially filed in the Law Division of this court on December 3, 1993. Both suits alleged derivative claims for the benefit of Prudential based on charges that the director and executive defendants were responsible for failing to discover and prevent the conduct underlying certain claims made against employees of Prudential's subsidiary, PSI, and certain real estate funds in *262 ongoing litigations. The Romano action also asserted purported class action claims on behalf of Prudential policyholders, claiming breaches of fiduciary duty and fraud arising from the same allegations upon which the derivative claims were based.
On January 31, 1994, defendants moved to transfer the Golebiowski and Romano cases to the Chancery Division and also to dismiss the complaints. Defendants contended that plaintiffs had failed to comply with New Jersey law because they had neither made a demand on Prudential's Board of Directors before filing their derivative suit, nor explained why such a demand was excused. Defendants moved to dismiss the class action claims in the Romano complaint for lack of standing to bring an action on behalf of policyholders, arguing that plaintiff had not and could not allege an injury to himself, as a policyholder, resulting from defendants' actions. In addition, defendants moved to dismiss for failure to plead with sufficient specificity. R. 4:32-5.
Plaintiffs consented both to the consolidation of the actions and to transfer of the consolidated action to the Chancery Division. At an April 8, 1994 conference, the court gave plaintiffs until May 9, 1994, to file an amended complaint in this consolidated proceeding. As the deadline approached, plaintiffs instead advised this court that they were filing a lawsuit in the United States District Court for the Southern District of New York, Romano v. Ball, 94 Civ. No. 3527. The federal complaint sought to place before the federal court the same basic claims then pending before this court.
After filing the federal suit, plaintiffs moved before this court to voluntarily dismiss the consolidated action, without prejudice. Plaintiffs asserted that they wanted to pursue their claims in the federal court in New York in conjunction with a number of investor class action lawsuits which had been transferred there by the Judicial Panel on Multidistrict Litigation. Defendants objected to plaintiffs' application, contending that it was more appropriate for a New Jersey state court to interpret the questions of first impression raised under New Jersey law by the demand futility allegations. Finding defendants' reasoning persuasive, this court *263 denied plaintiffs' application in order to determine the single issue of demand futility. The court also granted plaintiffs leave to file a consolidated amended complaint and then set a new briefing schedule for defendants' renewed motion.
Plaintiffs filed the amended complaint "under protest" on June 27, 1994. Defendants filed this motion to dismiss the amended complaint on July 18, 1994.
On September 14, 1994, plaintiffs filed an appeal of this court's denial of plaintiffs' application to voluntarily dismiss the consolidated action. Resolution of defendants' motion to dismiss was stayed pending plaintiffs' appeal. Defendants filed a motion to dismiss the appeal. On November 3, 1994, the Appellate Division dismissed plaintiffs' appeal as interlocutory. Oral argument on defendants' motion to dismiss was heard on January 25, 1995.

Summary of Alleged Facts
In considering defendants' motion to dismiss, the court is limited to examining the allegations in the Amended Complaint. See Rieder v. State Dept. of Trans., 221 N.J. Super. 547, 552, 535 A.2d 512 (App.Div. 1987). Therefore, although defendants dispute many of plaintiffs' allegations, the court sets forth the following as a summary of the facts alleged in the amended complaint.[1]
Prudential is a mutual insurance company owned by its policyholders and operated by its Board of Directors. Prudential is incorporated under the laws of New Jersey and is headquartered in Newark, New Jersey.
In 1981, Prudential acquired Bache Group, renamed Prudential-Bache Securities, Inc. and eventually renamed Prudential Securities, Inc. (PSI), a securities brokerage house specializing in retail brokerage. In 1982, George Ball was installed as Chief Executive Officer of PSI. Ball was also Chairman of PSI's Board of Directors and a member of Prudential's Executive Committee.
*264 PSI embarked on an aggressive campaign to increase revenue by selling a package of investment products. From 1981 until 1990, it marketed approximately $8 billion in limited partnership interests and other direct investments throughout the United States. Plaintiffs refer to this marketing scheme as the "Limited Partnership Program." The Limited Partnership Program was managed through, and in conjunction with, PSI's Direct Investment Group (DIG). Many, if not most, of the Limited Partnership Program offerings purportedly consisted of illiquid and highly speculative partnerships in oil and gas investments, real estate, aircraft leasing and horse breeding. Plaintiffs contend that PSI misrepresented these speculations as income-producing and suitable for safety conscious or conservative individual investors.
Certain Prudential insurance agents participated in the Limited Partnership Program after a joint-marketing group was formed in the early 1980's between Prudential and PSI. The joint-marketing group was overseen in part by individual Prudential officers. Through this joint marketing effort, Prudential insurance agents who were not registered to sell securities promoted and sold limited partnership interests to their insurance clients, allegedly in violation of numerous securities laws and exchange regulations.
In the mid-1980's, Prudential ceased investing in oil and gas partnerships which the insurance company had determined were poor risks. During this time, PSI continued to promote energy partnerships as sound investments. Plaintiffs maintain that PSI often falsely represented that Prudential was a major investor in these partnerships.
In 1991, Ball resigned as an executive from both PSI and Prudential. Concurrently, PSI became subject to the first of thousands of legal proceedings brought by investors in the limited partnership seeking recoveries of the amounts paid and/or compensatory damages.
An investigation by the Securities and Exchange Commission (SEC) into PSI's Limited Partnership Program culminated in the SEC's filing of an Order Instituting Public Proceedings, Making *265 Findings and Imposing Sanctions (the Order) on October 20, 1993. The SEC found that PSI had committed extensive securities fraud violations in conjunction with its marketing and sale of limited partnership interests, including misrepresenting speculative, illiquid limited partnerships as safe, income-producing investments.
Additionally, as disclosed in an October 21, 1993 litigation release, the SEC found that PSI failed to effectively comply with a 1986 SEC Order requiring PSI to implement and maintain recommendations made by a consultant as to improving its supervisory and compliance oversight procedures. The Order was grounded in findings that certain PSI employees had violated anti-fraud and other provisions of the federal securities laws and that PSI had failed to reasonably supervise those employees.
At the time the SEC announced the commencement of its action against PSI, it simultaneously announced a settlement and consent order. The consent order required PSI to establish a disgorgment fund of $330 million to be used to pay investors' compensatory damages claims arising from the Limited Partnership Program. Pursuant to the Order, Prudential agreed to take any appropriate steps in its capacity as a parent corporation to further PSI's compliance. However, the SEC specifically declined to impose any direct financial obligations on Prudential in connection with the Order.
As part of the same proceeding, the SEC fined PSI $10 million and various states assessed $26 million in penalties for violations of their securities laws. In addition, the NASD fined PSI $5 million for various security industry rule violations.
To protect against future losses resulting from the Limited Partnership Program's infractions, Prudential has established a resource of approximately $800 million. In the two years prior to the filing of the amended complaint, PSI has paid more than $250 million in judgments and settlements of investors' claims.
*266 At the time the amended complaint was filed, Prudential's role in the Limited Partnership Program was being investigated by the U.S. Attorney for the Southern District of New York. Mark Jorgensen, the Prudential executive who managed three real estate funds in Prudential's Property Investment Separate Account, has alleged that the values of certain properties had been improperly inflated over a period of years. Jorgensen also alleged that his disclosure of the inflated valuation to senior Prudential executives resulted in their stripping him of his responsibilities as fund manager.
The amended complaint names two groups of Prudential directors as defendants: 1) those who were directors during the periods of the alleged wrongdoing; and 2) those who are currently directors. Plaintiffs allege that demand upon Prudential's current Board of Directors would be futile for the following reasons:
First, plaintiffs allege that the directors failed to supervise the management of Prudential and PSI and therefore breached their fiduciary duties. Plaintiffs also allege that the Board of Directors is self-perpetuating and that directors are not subject to challenge, ratification or election by the policyholders. The amended complaint further alleges that the Board consists of, and is dominated and controlled by, the defendants who have been at the heart of the wrongdoing at issue.
Plaintiffs claim that demand would be futile because the directors have been aware of the wrongdoing for some time and have not asserted claims against the wrongdoers by reason of a reluctance to sue themselves, their friends and business associates. Plaintiffs point out that although Prudential and PSI have established a reserve of $800 million for future losses, have agreed to pay $300 million in settlement of the SEC proceedings, have agreed to pay approximately $60 million in settlement of legal proceedings stemming from the Limited Partnership Program, and are engaged in thousands of suits brought by investors and six major class actions, the directors have not initiated an independent investigation. Rather, the directors (with one exception) are *267 represented by the same counsel as Prudential and have moved to dismiss the amended complaint.
Plaintiffs also infer that the directors would not take action against the wrongdoers because the costs of defending such litigation would not be covered by Prudential's insurance policies. The policies in question normally cover costs of defending and indemnifying Prudential's directors and officers from liability for mismanagement and negligence, but exclude claims brought by Prudential, its directors or officers against any other directors or officers.

Additional Facts
Subsequent to the filing of both the amended complaint and defendants' motion to dismiss, two Prudential policyholders made a demand upon the Board of Directors. In a letter dated September 2, 1994, Vincent and Patricia Duker demanded that:
Prudential take immediate action to authorize the commencement of a derivative action on behalf of the company against the officers and directors responsible for what Prudential itself has called `The Limited Partnership Ordeal' and against the limited partnership general partners who may have contributed to Prudential's losses.
Prudential informed the Dukers, by letter of September 26, 1994, that their demand had been referred to the Board of Directors. The Dukers are not plaintiffs in the instant suit and counsel for plaintiffs has denied representing them.

DISCUSSION
On a motion to dismiss a pleading for failure to state a claim upon which relief can be granted, "the inquiry is confined to a consideration of the legal sufficiency of the alleged facts apparent on the face of the challenged claim." Rieder v. State Dept. of Trans., 221 N.J. Super. 547, 552, 535 A.2d 512 (App.Div. 1987) (quoting P. & J. Auto Body v. Miller, 72 N.J. Super. 207, 211, 178 A.2d 237 (App.Div. 1962)); see also Printing Mart v. Sharp Elec., 116 N.J. 739, 563 A.2d 31 (1989). To this end, "all facts alleged in the complaint and legitimate inferences drawn therefrom are deemed admitted." Smith v. City of Newark, 136 N.J. Super. 107, *268 112, 344 A.2d 782 (App.Div. 1975). However, "dismissal is mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted." Rieder, supra, 221 N.J. Super. at 552, 535 A.2d 512.
Defendants contend that the amended complaint must be dismissed because it is not pled with the particularity required by R. 4:32-5, which provides, in pertinent part, that:
[T]he complaint shall ... set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as is desired, and the reasons for the failure to obtain such action or the reasons for not making such effort.
New Jersey courts have long recognized the fundamental corporate law precept that:
[T]he right of a stockholder to prosecute a suit on behalf of the corporation can only be maintained by showing a refusal, either actual or presumptive, by the board of directors to do so. And where there has been no actual refusal, the burden is on the stockholder who brings the suit to show the existence of such a state of facts as justifies the conclusion that an application to the board to prosecute would be futile.
[Siegman v. Maloney, 65 N.J. Eq. 372, 373, 54 A. 405 (E. & A. 1903) (citation omitted).]
R. 4:32-5 has its genesis in R. 4:36-2, which was promulgated in 1948. The language of R. 4:36-2 was taken from, and was identical to, the former Rule 23(b) of the Federal Rules of Civil Procedure. Escoett v. Aldecress Country Club, 16 N.J. 438, 444, 109 A.2d 277 (1954). Fed.R.Civ.P. 23(b), and its earlier incarnations, Equity Rules 94 and 27, codified the common law requirement that a derivative suit plaintiff plead with particularity either his efforts to induce board members to take the desired remedial action, or the reasons why such efforts would have been useless. See Escoett, supra, 16 N.J. at 445, 109 A.2d 277.
In 1966, Fed.R.Civ.P. 23(b) was amended and Fed.R.Civ.P. 23.1, which encompassed the language of the prior Fed.R.Civ.P. 23(b), was added. In creating Fed.R.Civ.P. 23.1, the Advisory Committee noted that "[a] derivative action by a shareholder of a corporation or by a member of an unincorporated association has distinctive aspects which require the special provisions set forth in the new rule." 1966 Advisory Committee Notes. Fed.R.Civ.P. 23.1 *269 retained the requirement that plaintiffs who do not make demand upon a corporation's board of directors plead with particularity their reasons for not doing so.
Similarly, when R. 4:36-2 of the New Jersey Rules of Court was recast as R. 4:32-5 in 1969, the language requiring particularity in pleading demand and demand futility was retained. R. 4:32-5 was amended only once; in 1994, the rule was rendered gender neutral.
There are no reported decisions directly addressing the particularity with which demand futility must be alleged pursuant to R. 4:32-5 or its predecessor, R. 4:36-2. This court is aware of only one unreported decision in which a New Jersey court addressed a motion to dismiss a complaint for failure to sufficiently plead demand futility, pursuant to R. 4:32-5. In the unreported Sumers v. Abely, No. UN-L-2645-90 letter op. (N.J. Super.Ct.L.Div. Aug. 30, 1990), the court applied Delaware law in dismissing the complaint for failure to adequately plead demand futility.
There is a small body of pre-R. 4:32-5 decisions defining when demand is or is not futile. Siegman v. Maloney, supra, (demand not futile where seven of the twelve directors in office at the time of filing had no part in the wrongdoing, even though one of the seven was the brother and another the employee of an accused wrongdoer); Appleton v. American Malting Co., 65 N.J. Eq. 375, 377, 54 A. 454 (E. & A. 1903) (demand futile where complaint sought relief against the majority of directors); Toothe v. Dozier, 96 N.J. Eq. 46, 124 A. 319 (Ch. 1924) (demand futile where board of directors had approved wrongdoing); Holub v. Jacobwitz, 123 N.J. Eq. 308, 309, 197 A. 423 (Ch. 1937), aff'd, 123 N.J. Eq. 162, 197 A. 425 (E. & A. 1938) (demand futile where complaint alleged wrongdoing directors controlled board, other directors were their nominees, relatives and appointees, and defendant corporation joined director defendants in motion to dismiss complaint).
Analysis of these early cases leads this court to conclude that the standards by which pre-R. 4:36-2 courts judged demand futility were generally much more lenient than those imposed by *270 modern jurisdictions interpreting R. 4:36-2/R. 4:32-5 analogs. See, e.g., Richardson v. Graves, No. 6617, 1983 WL 21109 (Del. Ch. 1983) (complaint insufficient where it did not provide "corroboration that [the directors] `authorized, acquiesced in and ratified' the illegal conduct."). Moreover, R. 4:36-2 was promulgated in response to an expanding volume of derivative actions and to "abuses ... which called for legislative intervention." Escoett, supra, 16 N.J. at 448, 109 A.2d 277. Clearly, the codification of the particularity requirement in R. 4:36-2 was meant to halt abuses by insuring that shareholder plaintiffs use the courts as a last resort to bring about desired change. This is consistent with New Jersey's long-held recognition of the "business judgment rule," which
instructs that a decision made by a board of directors pertaining to the manner in which corporate affairs are to be conducted should not be tampered with by the judiciary so long as the decision is one within the power delegated to the directors and there is no showing of bad faith.
[Exadaktilos v. Cinnaminson Realty Co., 167 N.J. Super. 141, 151, 400 A.2d 554 (Law Div. 1979) (citing Sarner v. Sarner, 62 N.J. Super. 41, 60, 162 A.2d 117 (App.Div. 1960), rev'd & rem. on other grounds, 38 N.J. 463, 185 A.2d 851 (1962)); Edison v. Edison United Phono. Co., 52 N.J. Eq. 620, 626-27, 29 A. 195 (Ch. 1894), aff'd, 173 N.J. Super. 559, 414 A.2d 994, certif. denied, 85 N.J. 112, 425 A.2d 273 (1980).]
Escoett is the only post-R. 4:36-2 decision addressing the demand pleading requirements encompassed by that rule and R. 4:32-5. The primary issue before the Court in Escoett was whether it was necessary, pursuant to R. 4:36-2, for the plaintiff, a member of an incorporated country club, to make demand upon the general body of members before bringing a derivative suit against the club. Prior to the adoption of R. 4:36-2, New Jersey law did not require such application to the general body of stockholders. Id. at 447, 109 A.2d 277. Rather, the law merely contemplated demand on the board of directors. Id. at 447, 109 A.2d 277.
In interpreting R. 4:36-2, the Court looked to federal decisions construing Fed.R.Civ.P. 23(b), Fed.R.Civ.P. 23.1's predecessor, because R. 4:36-2's language was taken from, and identical to, that *271 of Fed.R.Civ.P. 23(b). The Court also considered pre-R. 4:36-2 New Jersey case law; and the background of R. 4:36-2's adoption. Id. at 444-50, 109 A.2d 277.
Demand upon the trustees was not at issue in Escoett because the complaint alleged that the trustees were improperly installed by, and were the puppets of, a defendant who had himself improperly assumed the position of sole controlling trustee. The narrow holding of Escoett is that the plaintiff, who was denied access to membership lists, who communicated with members he knew, and who stated that many of the members he contacted were reluctant to take action because they feared losing their pre-paid memberships, was not required, under the circumstances, to make a demand on the general membership. Id. at 451, 109 A.2d 277.
Therefore, the issues raised by defendants' motion regarding whether plaintiffs have alleged demand futility with sufficient particularity, pursuant to R. 4:32-5, are essentially questions of first impression. Courts of other jurisdictions, most notably federal courts and courts in Delaware and New York, have developed significant bodies of case law addressing the issues raised by defendants' motion. Because R. 4:32-5 has its genesis in Rule 23.1 of the Federal Rules of Civil Procedure, it normally would be appropriate for this court to consider federal precedents. See id. at 444, 109 A.2d 277; cf. Galloway Tp. Bd. of Educ. v. Galloway Tp. Ass'n of Educ. Sec., 78 N.J. 1, 10, 393 A.2d 207 (1978). However, in Kamen v. Kemper Fin. Servs., 500 U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991), the United States Supreme Court held that the substantive requirements of demand are a matter of state law. Id. at 97-98, 111 S.Ct. at 1716-17. In the wake of Kamen, federal courts have analyzed demand futility under state law, rather than the established federal common law. See, e.g., Blasband v. Rales, 971 F.2d 1034, 1047 (3rd Cir.1992); Salit v. Stanley Works, 802 F. Supp. 728 (D.Conn. 1992); Burghart v. Landau, 821 F. Supp. 173 (S.D.N.Y. 1993), aff'd, 9 F.3d 1538 (2d Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1304, 127 L.Ed.2d 656 (1994). Therefore, this court will primarily focus on the *272 decisions of Delaware, New York and other state courts. However, because R. 4:32-5 originated in the federal rule, the court will also examine relevant federal common law where appropriate.
The relevant language of R. 4:32-5 is virtually the same as that of Delaware Chancery Court Rule 23.1 and N.Y. Business Corporations Law § 626(c). Delaware is recognized as a pacesetter in the area of corporate law. Indeed, it has been observed that "Delaware corporate law has long been followed  sometimes almost reflexively  by other American jurisdictions." John C. Coffee, Jr. & Adolf A. Berle, Derivative Litigation Under Part VII of the ALI Principles of Corporate Governance: A Review of the Positions and Premises, C852 ALI-ABA 89, 114 (1993). For example, in Pogostin v. Leighton, 216 N.J. Super. 363, 373, 523 A.2d 1078 (App.Div.) cert. denied, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987), which addresses R. 4:32-5's requirement that in order to bring suit, a plaintiff must own stock prior to the transaction of which he complains, the Appellate Division found that "[a]s the issue involved herein is one of corporate law, an appropriate source of reference is the case law of Delaware." The court reasoned that Delaware law was instructive because the purpose behind the stock ownership provisions in both R. 4:32-5 and Delaware Chancery Court Rule 23.1 was the same: to thwart strike suits, wherein would-be plaintiffs acquire a few shares of a corporation's stock in order to harass the corporation with litigation and force a settlement. Id. (citing Valle v. North Jersey Auto. Club, 141 N.J. Super. 568, 579, 359 A.2d 504 (App.Div. 1976), modified & aff'd, 74 N.J. 109, 376 A.2d 1192 (1977)).
New York courts have also developed a significant body of case law on the subject of demand futility. Certain commentators consider New York law to be more liberal in excusing demand. See Coffee & Berle, supra, at 98. Therefore, the court will discuss New York law, and the law of other jurisdictions where appropriate, in order to insure a balanced perspective on the law addressing demand futility.

*273 Whether Plaintiffs' Suit is Rendered Moot by the Dukers' Demand

Subsequent to Prudential's receipt of the Dukers' demand letter, defendants sent letter briefs to this court asserting that the demand prevented plaintiffs from continuing to litigate the instant suit. Defendants cite Stotland v. GAF Corp., 469 A.2d 421 (Del.Sup.Ct. 1983); Boeing Co. v. Shrontz, No. 11, 273, 1992 WL 81228 (Del. Ch. April 20, 1992); and Stepak v. Addison, 20 F.3d 398, 412 (11th Cir.1994), for the proposition that the demand futility analysis is rendered moot once demand is made. As defendants acknowledge, in Stotland and Boeing named plaintiffs made the demand which rendered the futility analysis moot as to other named plaintiffs. The present case is distinguishable because the Dukers are not named plaintiffs. The court's research has not disclosed any case in which demand by a nonparty mooted a plaintiff's futility claim. The court is not swayed by defendants' argument that the Dukers are represented by plaintiffs' counsel and are therefore equivalent to named plaintiffs in this suit. Plaintiffs' counsel has repeatedly denied representing the Dukers and defendants have not come forward with any evidence showing that plaintiffs and the Dukers share the same counsel.
Nor does the court find Stepak v. Addison applicable to the case at hand. In Stepak, a named plaintiff made a demand which the district court held mooted the futility claim of the other named plaintiff. Stepak v. Addison, Civ. No. 291-115 (S.D.Ga. Sept. 24, 1991), aff'd, 20 F.3d 398 (11th Cir.1994). However, the Eleventh Circuit characterized the district court's holding thus: "[the plaintiff's] demand precluded any ... stockholder from prosecuting a demand other excused [sic] derivative suit based on the claims covered by the [plaintiff's] demand letter." Stepak, 20 F.3d at 412 (emphasis added). The Eleventh Circuit declined to consider that aspect of the district court's holding, finding that the plaintiff who had not made demand had waived the issue by failing to address it on appeal. Ibid.
*274 This court is not bound by the Eleventh Circuit's dicta, nor does it find the circuit court's characterization of the district court's decision either accurate or persuasive. Moreover, the Eleventh Circuit's approach has been rejected by a Delaware court on facts analogous to those in the instant case. In Avacus Partners, L.P. v. Brian, 1990 WL 161909, [*]9, 1990 Del. Ch. LEXIS 178, [*]28; Fed.Sec.L.Rep. (CCH) ¶ 96, 232 at 91, 216 (Del. Ch. Oct. 24, 1990), a non-party shareholder made a demand challenging the same transaction that was the subject of the plaintiff's derivative suit. The board established a special committee of two newly appointed members to investigate the allegations. The special committee retained independent counsel and issued a report recommending that no action be taken. Ibid. Addressing the defendants' argument that these events established that demand upon the board would not have been futile, the court held that it must examine the complaint to see if demand futility was properly alleged and that "the responses of the ... board to another shareholder's demand is not sufficient to compel dismissal of [the plaintiff's] claims...." Id. 1990 WL 161909, at [*]10, [*]30.
The court finds the reasoning set forth in Avacus persuasive and will not dismiss plaintiffs' derivative claims based on the Duker's demand or Prudential's response to it.

Whether the Amended Complaint Alleges Demand Futility with Particularity
It is universally recognized that a shareholder derivative claim is one in which a shareholder asserts a claim belonging to the corporation. Escoett, supra, 16 N.J. at 445, 109 A.2d 277; Heineman v. Datapoint Corp., 611 A.2d 950, 952 (Del.Sup.Ct. 1992). The decision to bring a lawsuit or to refrain from litigating a claim on behalf of the corporation is a decision concerning the management of the corporation and is thus normally the responsibility of the directors. Escoett, supra, 16 N.J. at 445, 109 A.2d 277; Levine v. Smith, 591 A.2d 194, 200 (Del.Sup.Ct. 1991); Blasband v. Rales, 971 F.2d 1034, 1047 (3d Cir.1992).
*275 As discussed, R. 4:32-5, like its federal and state counterparts, requires that a shareholder bringing a derivative suit allege with particularity either his efforts to obtain the desired action from the directors by making a demand, or the reason he did not undertake such efforts. Demand is excused only where the particularized allegations of the complaint create an inference that the board is "incapable of exercising its power and authority to pursue the derivative claim directly." Levine, supra, 591 A.2d at 205. See also, Escoett, supra, 16 N.J. at 445-46, 109 A.2d 277.
In Aronson v. Lewis, 473 A.2d 805 (Del.Sup.Ct. 1984), the Delaware Supreme Court established a two-part test to evaluate claims of demand futility. In order for a complaint to withstand a motion to dismiss for failure to make demand, a complaint must plead with particularity facts creating a reasonable doubt either that: 1) the directors are disinterested and independent; or 2) the challenged transaction was otherwise than the product of a valid exercise of business judgment. Id. at 805. The facts alleged in the complaint must be sufficient to overcome the presumption that the directors are disinterested and independent and acted with sound business judgment. Id. at 811.

1. Does the Complaint Create a Reasonable Doubt that the Directors are Disinterested and Independent
Under the first prong of the Aronson test, the court must examine the allegations of the complaint to determine whether they raise a reasonable doubt that, at the time the complaint was filed, the directors were interested or lacked independence. Ibid. New York and federal common law set forth similar requirements. See Barr v. Wackman, 36 N.Y.2d 371, 368 N.Y.S.2d 497, 329 N.E.2d 180, 186, (1975) (futility established only where plaintiff pleads particularized facts demonstrating that "the alleged wrongdoers control or comprise a majority of the directors."); Lewis v. Curtis, 671 F.2d 779, 784 (3d Cir.1982), cert. denied, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982) (demand excused where complaint alleges with particularity that a majority of directors *276 participated in wrongdoing or that the board is controlled by wrongdoers).
Directoral interest exists when divided loyalties are present, or where the director stands to receive a personal financial gain from the transaction not equally shared by the shareholders. Aronson, supra, 473 A.2d at 812; Pogostin v. Rice, 480 A.2d 619, 624 (Del.Sup.Ct. 1984). Directoral independence "means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." Aronson, supra, 473 A.2d at 816.
Conclusory allegations of fact or law unsupported by allegations of specific fact are insufficient. Grobow v. Perot, 539 A.2d 180, 187 (Del.Sup.Ct. 1988). As the Delaware Chancery Court has explained:
[N]otice pleading is not enough. Generalities, artistically ambiguous, all-encompassing conclusory allegations are not enough. What is required are pleadings that are specific and, if conclusory, supported by sufficient factual allegations that corroborate the conclusion and support the proposition that demand is futile.
[Richardson v. Graves, No. 6617, 1983 WL 21109, at [*]2 (Del. Ch. Mar. 7, 1983).]
It is therefore crucial that "[t]here must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person." Aronson, supra, 473 A.2d at 817. A plaintiff may not bootstrap allegations of futility merely by alleging that the directors participated in the challenged transaction or that they would be reluctant to sue themselves. Pogostin, supra, 480 A.2d at 625; Aronson, supra, 473 A.2d at 817-18. See Citron v. United Tech., 796 F. Supp. 649 (D.Conn. 1992) (applying Delaware law). Conclusory allegations are insufficient to excuse demand. Ibid.; Barr, supra, 368 N.Y.S.2d at 504-06, 329 N.E.2d at 186.
The amended complaint advances several conclusory allegations speaking to director interest and lack of independence. As an initial matter, the court notes that Section D of the amended complaint, entitled Derivative Allegations and Allegations Regarding Demand, is rife with conclusory allegations that the *277 defendant directors are not disinterested or independent and that they are controlled by the "defendants at the heart of the wrongdoing." As explained supra, these conclusory allegations alone do not suffice to excuse demand. See Grobow v. Perot, 526 A.2d 914, 924 (Del. Ch. 1987) ("It is now well-settled that an allegation that a majority of directors approved, participated, or acquiesced in the challenged transaction will not, in and of itself, establish demand futility."), aff'd, 539 A.2d 180 (Del.Sup.Ct. 1988); Mondschein v. Welch, N.Y.L.J., Dec. 30, 1992 (Sup.Ct.N.Y. Dec. 14, 1992) (conclusory allegations that directors "participated in" and "knew of" the alleged wrongdoing or were "direct beneficiaries of" the wrongdoing are insufficient to excuse demand); Citron, supra, 796 F. Supp. 649 (finding allegations that directors "engaged in" "participated in" and "caused" wrongdoing to be conclusory absent "specification of particular personal acts or conduct to sustain asserted conclusions.").
The amended complaint does not single out, among current or past directors, which directors participated in the alleged wrongdoing, which directors "control" the board and which are, in turn, "controlled." No individual directors or group of directors are set apart; in fact, many allegations do not differentiate among the directors and the other defendants. Nor does the amended complaint plead any facts showing that past directors had actual knowledge of the alleged wrongdoings at the time they were committed.
The amended complaint does not allege entrenchment. However, it does allege that the directors are "self-perpetuating, appoint themselves and those upon whom they can rely," that "directors are not subject to challenge, ratification or election by the policyholders," and that "there are no independent directors", because "all directors are selected either by the incumbent directors or public authorities." Looking solely to the language of the amended complaint, and not considering that election is provided *278 by statute[2], these allegations do not sufficiently allege interest. Aronson rejected similar claims, explaining that:
[I]t is not enough to charge that a director was nominated or elected at the behest of those controlling the outcome of a corporate election. That is the usual way a person becomes a corporate director. It is the care, attention and sense of individual responsibility to the performance of one's duties, not the method of election, that generally touches on independence.
[Aronson, supra, 473 A.2d at 816.]
Therefore, even assuming that the directors are "self-perpetuating," plaintiffs must further show that, at the time suit was brought, the directors would not have accepted demand. A lack of corporate democracy does not, in itself, show the directors to be self-interested and necessarily hostile to accepting demand.
Plaintiffs also claim that defendants are self-interested because they do not want to sue themselves, their friends and their business associates. Delaware, federal and New York courts flatly reject these allegations as excusing demand. As observed in Aronson:
[T]he incantation that demand is excused because the directors otherwise would have to sue themselves [is a] bootstrap argument [which] has been made to and dismissed by other courts.... Its acceptance would effectively abrogate Rule 23.1 and weaken the managerial power of directors. Unless facts are alleged with particularity to overcome the presumptions of independence and a proper exercise of business judgment, in which case the directors could not be expected to sue themselves, a bare claim of this sort raises no legally cognizable issue....
[Aronson, supra, 473 A.2d at 818 (citing Lewis v. Graves, 701 F.2d 245, 248-49 (2d Cir.1983); Heit v. Baird, 567 F.2d 1157, 1162 (1st Cir. 1977); Lewis v. Anselmi, 564 F. Supp., 768, 772 (S.D.N.Y. 1983)).]
Such allegations were also rejected by the New Jersey Court of Errors and Appeals in Siegman, supra, 65 N.J. Eq. at 373, 54 A. 405.
*279 Plaintiffs further claim that the directors are not disinterested because Prudential's insurance policies contain provisions excluding from coverage claims brought by Prudential or any of its directors and officers against any of the other directors and officers. Plaintiffs cite two cases, Grill v. Hoblitzell, 771 F. Supp. 709, 713 (D.Md. 1991) and First Amer. Bank & Trust v. Frogel, 726 F. Supp. 1292, 1298 (S.D.Fla. 1989), in support of their position that such policy exclusions render a board "interested."
In Grill, the plaintiff's alleged that under the corporation's directors' and officers' insurance, the corporation would be required to cooperate in the defense of claims against the directors and officers. The plaintiff asserted that the insurance carrier would deny coverage by maintaining that the corporation and board would be contractually disabled from complying with a demand that the corporation institute suit against the individual defendants. Grill, supra, 771 F. Supp. at 713. The court found this allegation insufficient to show demand futility, but observed that if the policies permitted coverage in a derivative suit instituted by a shareholder, but excluded coverage for any action instituted by the corporation at the board's direction, it might show that the directors deprived themselves of the ability to execute independent judgment. Ibid. For this reason, the court dismissed the complaint without prejudice and granted the plaintiff leave to file an amended complaint including more specific facts as to the provisions of the pertinent policies. Id.
The court in First American Bank applied the Aronson test and held that demand futility had been sufficiently pleaded where the complaint alleged that the directors' insurance policy contained a provision prohibiting the board from instituting suit on behalf of the bank against an officer or director. 726 F. Supp. at 1298.
Delaware courts addressing the issue have taken the opposite approach. See Caruana v. Saligman, No. 11135, 1990 WL 212304 at [*]4 (Del. Ch. Dec. 21, 1990); Decker v. Clausen, Nos. 10,684 & 10,685, 1989 WL 133617 at [*]2 (Del. Ch. Nov. 6, 1989) (allegation *280 that liability insurance would not cover an action brought by the company against its own directors is "variation[] on the `directors suing themselves' and `participating in the wrongs' refrain."). Stepak, supra, 20 F.3d at 411, cited Decker to support its holding that the insured v. insured policy exclusion did not per se establish director self-interest. Similarly, in Stoner v. Walsh, 772 F. Supp. 790, 805 (S.D.N.Y. 1991), the court applied New York law and rejected the plaintiff's contention that existence of the standard exclusion automatically renders a board member "interested" with respect to demand.
The issue is discussed by Nicholas E. Chimicles and M. Katherine Meermans in The Insured v. Insured Exception in D & O Insurance Policies, C938 ALI-ABA 749 (1994). Chimicles and Meermans favor the result in Grill and caution that the impact of the insured v. insured exclusion "on the demand issue in derivative litigation must be taken seriously by all parties involved in these cases, as well as the courts in which they are brought." Chimicles & Meermans, supra, at 756.
The court is alert to the possibility that an insured v. insured exclusion might decrease the likelihood that demand will be accepted. As a practical matter, however, routine excuse of demand based on the existence of such standard exclusions would eviscerate the demand requirement. This court will therefore follow the well-reasoned approach taken by the Delaware courts, the Eleventh Circuit and the Southern District of New York. Pleading that the board would be swayed by the existence of the aforementioned policies is insufficient to show lack of director interest.
The amended complaint charges that the directors have demonstrated their interest by filing the motion to dismiss that is the subject of this decision. Obviously, this argument is without merit. First, it is axiomatic that director disinterest is measured by director action as of the time the complaint was filed. See Pogostin, supra, 480 A.2d at 624; Blasband, supra, 971 F.2d at 1034. Second, the purposes behind R. 4:32-5 particularity requirement would be frustrated if a plaintiff could show lack of *281 director interest merely by pointing out that the directors have filed a motion to dismiss pursuant to the rule.
In a similar vein, plaintiffs asserted during argument that defendants are not disinterested because they are represented by the same counsel as Prudential. The amended complaint merely states that "Defendants have not used said litigation as a vehicle to assert claims to conduct an independent investigation, but rather, Prudential represented by the same counsel as the defendants ... have moved ... to dismiss." The allegations regarding conflict due to mutual representation are outside the pleadings and must not be considered by this court. Rather, judicial inquiry into demand futility is necessarily limited to examination of a plaintiff's complaint. Cf. Siegman, supra, 65 N.J. Eq. at 373, 54 A. 405; Aronson, supra, 473 A.2d at 814.
However, the court notes that counsel's dual representation in the preliminary stages of a corporation and its directors, where those defendants jointly seek dismissal on legal grounds, has been held to be proper. See Clark v. Lomas & Nettleton Fin. Corp., 79 F.R.D. 658 (N.D.Tex. 1978); Hausman v. Buckley, 299 F.2d 696 (2d Cir.), cert. denied, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962).
Plaintiffs also asserted during argument that the settlements entered into and the reserve established by Prudential for future losses constitute self-dealing. This allegation of self-dealing in connection with the settlements is wholly outside the language of the amended complaint. The paragraphs specifically mentioning the settlements and the reserve, paragraphs 7, 125-27, 131-132, and 159 of the amended complaint, do not criticize the entry into the settlements or the creation of the reserves. Rather, paragraphs 7 and 159 criticize Prudential and PSI for not bringing actions against the individual employees, officers or directors accused of wrongdoing.
The failure of the amended complaint to plead director self-dealing with the required particularity is further illustrated by *282 reference to cases where self-dealing was found to be properly pleaded. In Heineman v. Datapoint Corp., 611 A.2d 950 (Del. Sup.Ct. 1992), reasonable doubt was raised as to director disinterest where the complaint alleged that a majority of the board reimbursed themselves for costs incurred in a proxy contest by voting funds from the corporate treasury in excess of $1 million. Director "self-interest" was sufficiently alleged in Abrams v. Koether, [1992 Transfer Binder] Fed.Sec.L.Rep. (CCH) P 96,995, 1992 WL 295195 (D.N.J. Aug. 7, 1992), where a majority of the board served as directors or officers of other corporations with which the corporation had engaged in allegedly unfair transactions. In Barr, supra, 36 N.Y.2d 371, 368 N.Y.S.2d 497, 329 N.E.2d 180 (1975), the complaint sufficiently alleged that the board actively participated in the wrongdoing by alleging that the directors formally approved a plan whereby a minority of the directors engaged in self-dealing in return for specifically identified pecuniary and other benefits.
Consequently, plaintiffs have failed to allege with particularity that the Board of Directors had an interest or lacked independence.
The court will next determine whether the amended complaint alleges with particularity that the challenged transactions were other than the products of valid business judgment.

2. Does the Amended Complaint Create a Reasonable Doubt that the Challenged Transactions Were Other Than the Products of Reasonable Business Judgment.
The second prong of the Aronson analysis asks whether the complaint alleges with particularity facts creating a reasonable doubt that the challenged transaction was otherwise than the product of a valid exercise of business judgment. Aronson, supra, 473 A.2d at 814. This analysis encompasses whether the directors fulfilled their duty of procedural due care by becoming fully informed, and their duty of substantive due care by not engaging in waste, etc. See Grobow, supra, 539, 539 A.2d at 189. Where a *283 plaintiff has failed to satisfy the first prong of the Aronson test, there is a rebuttable presumption that the business judgment rule attaches to the challenged transaction. Levine, supra, 591 A.2d at 206.
Aronson itself makes a distinction between challenged action and challenged inaction: "the business judgment rule operates only in the context of director action. Technically speaking, it has no role where directors have either abdicated their functions, or absent a conscious decision, failed to act." Aronson, supra, 473 A.2d at 813. See also Sparks, Hamermesh, Lafferty & Heyman, supra, at 716-27.
Plaintiffs generally aver Board "participation" and "approval" of the wrongdoings described throughout the amended complaint. However, absent particularized pleading of underlying facts, such unspecific allegations are conclusory and do not sufficiently address challenged transactions.
Instead, the underlying facts of the amended complaint focus on director inaction: (1) the failure of the directors to bring suit; (2) the failure of the directors to insure PSI's compliance with a 1986 SEC Order; (3) and the failure of the directors to stop the alleged illegal actions of the executive defendants. Recently, in Rales v. Blasband, 634 A.2d 927, 933 (Del.Sup.Ct. 1993), the Delaware Supreme Court held that the second prong of the Aronson test does not apply to situations where the Board has not taken action. The court explained that "the absence of board action ... makes it impossible to perform the essential inquiry contemplated by Aronson, whether the directors have acted in conformity with the business judgment rule in approving the challenged transaction." Id. at 933.
Rales instructed that:
Consistent with the context and rationale of the Aronson decision, a court should not apply the Aronson test for demand futility where the board that would be considering the demand did not make a business decision which is being challenged in the derivative suit. This situation would arise in three principal scenarios: 1) where a business decision was made by the board of a company, but a majority of *284 the directors making the decision have been replaced; 2) where the subject of the derivative suit is not a business decision of the board; and 3) where ... the decision being challenged was made by the board of a different corporation.
[Id. at 933-34 (footnotes omitted).]
In such situations, plaintiffs can demonstrate demand futility only by pleading with particularity facts creating a reasonable doubt that a majority of the board is not independent and disinterested. Id. at 934.
In the instant case, the allegations against the Board primarily fall under the second and third categories of inaction described by Rales.[3] The failure of the Prudential directors to insure PSI's compliance with a 1986 SEC Order is a failure to supervise a subsidiary. The failure of the directors, more generally, to stop the alleged illegal actions of the executive defendants is failure to oversee both subordinates and a subsidiary corporation. Rales specifically recognized that failure to oversee subordinates is "not a business decision of the board." Id. at n. 9. The court stressed that:
[W]here directors are sued derivatively because they have failed to do something (such as a failure to oversee subordinates), demand should not be excused automatically in the absence of allegations demonstrating why the board is in incapable of considering a demand. Indeed, requiring demand in such circumstances is consistent with the board's managerial prerogatives because it permits the board to have the opportunity to take action where it has not previously considered doing so.
[Ibid.]
Cf. In re Bessemer Trust Co., 147 N.J. Super. 331, 363, 371 A.2d 316 (Ch.Div. 1976), aff'd sub nom., Bessemer Trust Co. v. Boegner, 165 N.J. Super. 76, 397 A.2d 708 (App.Div. 1979).
Similarly, the failure of the directors to bring suit, in itself, does not excuse demand. See Richardson, 1983 WL 21109, at [*]3 (finding the theory that if directors were inclined to sue, they would already have done so, insufficient); Stotland v. GAF Corp., *285 1983 WL 21371, at [*]5 (Del. Ch. Sept. 1, 1983) ("[T]o excuse demand on this basis deprives the board of the opportunity to be `prodded into action' to correct the alleged wrong").
As discussed, plaintiffs have not alleged facts creating a reasonable doubt that, at the time the original complaint was filed, the Board lacked either disinterest or independence. Therefore, according to the principles by which demand futility is analyzed, most clearly set forth in Aronson and Rales, plaintiffs have failed to show why demand was futile and should be excused.

CONCLUSION
Plaintiffs have failed to plead with the particularity required by R. 4:32-5 why demand should be excused. Counts I and II of the amended complaint, containing plaintiffs' derivative claims, are therefore dismissed, without prejudice. Plaintiffs are permitted to voluntarily dismiss their remaining claims, without prejudice.
NOTES
[1] A copy of the amended complaint is also annexed as an appendix to this opinion, as filed.
[2] With the exception of six public directors appointed by the Chief Justice pursuant to N.J.S.A. 17B:18-19 to represent the best interests of "the insurer, its policyholders and the public." Prudential's directors are elected by qualified voters. N.J.S.A. 17B:18-22. Qualified voters include "every policyholder who is 18 years of age or more and whose policy has been in force for at least 1 year." N.J.S.A. 17B:18-23.
[3] The court also notes that, to the extent plaintiffs allege that directors participated in and approved of the underlying wrongdoing, most, if not all, such directors had been replaced by the time the Amended Complaint was filed. Thus, these allegations fall under the first Rales category of inaction.