## In re DISCOVERY LABORATORIES DERIVATIVE LITIGATION.

### Master File No. 06–2058.

United States District Court, E.D. Pennsylvania.

May 1, 2007.

Robert L. Hickok, Christopher J. Huber, Gay Barlow Parks Rainville, Nicole Tell,

Pepper Hamilton LLP, Philadelphia, PA, for defendants.

William B. Federman, Federman & Sherwood, Oklahoma City, OK, Marc S. Henzel, Law Offices of Marc S. Henzel, Bala Cynwyd, PA, for plaintiffs.

## MEMORANDUM

DALZELL, District Judge.

Plaintiffs seek recovery on behalf of nominal defendant Discovery Laboratories for alleged breaches of fiduciary duty on the part of the corporation's directors and officers. Defendants move to dismiss the complaint on the grounds, among others, that plaintiffs have neither made a demand that the board bring suit, as Fed.R.Civ.P. 23.1 requires, nor demonstrated that such a demand would be futile.

Because we find that, especially in light of our rulings in the related securities fraud suit, plaintiffs have not demonstrated demand futility, we will grant defendants' motion.

### Facts

Discovery Laboratories is a small biotechnology company based in Warrington, Pennsylvania that focuses on the production of remedies for respiratory diseases. In particular, Discovery develops therapies to replace natural surfactants, which are essential to the lungs' ability to absorb oxygen. Although Discovery currently has no product on the market, its leading candidate is a synthetic surfactant, Surfaxin, which would be used in the prevention and treatment of Respiratory Distress Syndrome (RDS) in premature infants.

During 2005 and 2006, the company experienced a series of manufacturing difficulties [1] that have significantly delayed the marketing approval of Surfaxin, both in the United States and in Europe. Not surprisingly, these delays have significantly reduced the company's share price. Shareholders sought to recover their losses using two avenues of litigation: a claim that the company

---

1. Those difficulties are reviewed in detail in our earlier opinions in the related securities fraud suit. See In re Discovery Labs. Sec. Litig., 2006 WL 3227767 (E.D.Pa. Nov. 1, 2006) (Discovery I); In re Discovery Labs. Sec. Litig., 2007 WL 789432 (E.D.Pa. Mar. 15, 2007) (Discovery II).

and its officers had made false and misleading statements in violation of the federal securities laws, and a claim that the directors and officers[2] had violated their fiduciary duty to the company.

In March of this year, we dismissed all claims in the securities fraud suit. *See Discovery II* at *7. Plaintiffs' claims in the derivative suit arise from the same allegedly false and misleading statements that were at issue in that action. The central claim is that, by causing and/or allowing these false statements to be made, the defendants subjected the corporation to potential liability under the Securities Exchange Act of 1934. Now before us is defendants' motion to dismiss this derivative suit.

### Analysis

Defendants' primary claim, and the one to which we devote the bulk of our attention, is that plaintiffs have failed adequately to allege demand futility.

In order to institute a derivative suit on behalf of a corporation, a plaintiff must either allege that he or she has made a demand on the board of directors to bring suit or that such a demand would be futile. *See* Fed. R.Civ.P. 23.1. In *Aronson v. Lewis,* 473 A.2d 805 (Del.1984), the Delaware Supreme Court established the standards for alleging demand futility in a shareholder derivative action.[3] The court began by noting that "[a] cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation" and that "[b]y its very nature the derivative action impinges on the managerial freedom of directors." *Id.* at 811. The demand requirement, therefore, exists as a hurdle to limit the ability of shareholders to bring frivolous derivative suits. It "exists at the

threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." *Id.* at 811–12.

■ The law, however, recognizes that there are cases when making such a demand on the directors would be futile. Rather than requiring plaintiffs to go through the useless and expensive exercise of making such a demand, courts have allowed plaintiffs to proceed if they can demonstrate demand futility. In order to meet that requirement, a plaintiff must plead with particularity facts that create a reasonable doubt that either "(1) the directors are disinterested and independent [or] (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Id.* at 814. Where, as here, plaintiffs are not challenging a particular transaction but rather the general activity or inactivity of the board, only the first element of the test applies. *Rales v. Blasband,* 634 A.2d 927, 933–34 (Del.1993). Plaintiffs here must, therefore, plead facts that create a reasonable doubt that at least three of the five defendant directors[4] were independent and disinterested during the period in question.

■ Plaintiffs' first allegation is that defendants were not disinterested because they faced the threat of personal liability. While it is possible for a director's independence to be challenged on this basis, such a determination is far from automatic just because the director is named in the suit. "The 'mere threat' of personal liability in the derivative action does not render a director interested; however, a 'substantial likelihood' of personal liability prevents a director from impartially considering a demand." *Seminaris v. Landa,* 662 A.2d 1350, 1354 (Del.Ch.1995) (quoting *Rales,* 634 A.2d at 936).

---

2. Defendants include four non-employee members of the board of directors; Robert Capetola, who is President and CEO of the company and serves on its board; and Christopher Schaber, who was the COO of the company until May of 2006 but was never a member of the board. The Chairman of the Board, Herbert H. McDade, Jr. was dismissed from the suit by stipulation in order to maintain complete diversity.

3. Discovery Laboratories is incorporated in Delaware and the parties agree that Delaware's substantive corporate law applies to this action.

4. Since McDade is no longer a defendant in this suit, we must assume that he was independent. With regard to demand futility, we need not consider defendant Schaber since he was never a member of the board and so would not have been responsible for responding to such a demand.

■ In an attempt to make the requisite showing, plaintiffs claim that "[e]ach of the Defendant Directors actually engaged in securities fraud thereby exposing the Company to liability for same." Pl. Mem. at 12. While such a claim, if supportable, might be sufficient to demonstrate the needed lack of objectivity, under the circumstances here, it is far from adequate. We first note that—with the exception of Capetola, who signed most of the press releases at issue—the director defendants signed or otherwise ratified only the annual reports. The earlier securities litigation addressed at length the statements made in those reports, *see, e.g., Discovery I* at *3, *6–7, and conclusively determined that they were not false or misleading within the meaning of the federal securities laws. Even though we are here presented with different named plaintiffs, because plaintiffs here were members of the putative class in the securities fraud suit, that determination is *res judicata* here. *See Jackson v. Hayakawa*, 605 F.2d 1121, 1125–26 (9th Cir.1979). Plaintiffs cannot claim that the directors face a "substantial likelihood" of personal liability when we determined, based only on the pleadings, that the statements at issue were not fraudulent and would not support federal liability.[5]

Plaintiffs next claim that some directors face liability in the derivative suit because of their membership on certain board committees.[6] Plaintiffs first ask us to find a substantial likelihood of liability for defendants Link and Amick, the members of the Compliance Committee. Even if it were true[7] that, as members of the Compliance Committee, defendants Link and Amick had a duty to examine each of the statements at issue here for potential violations of the securities laws, we cannot fault them for reaching the same conclusion as we did, namely that these statements did not expose the company to federal liability for securities fraud.

Plaintiffs next claim that, as members of the Audit Committee, defendants Link and Rosenthale were under a heightened duty to guard against financial improprieties. While that may be true, there are no allegations of financial improprieties in *this* case,[8] so membership in the Audit Committee is of no relevance.

■ Even were the activities of these committees relevant to plaintiffs' allegations, that would not be sufficient to demonstrate demand futility. It is not true, as plaintiffs appear to claim, that membership in a committee assigned to oversee certain activities is sufficient to demonstrate demand futility for a suit arising from those activities. *See In re Cray Inc.*, 431 F.Supp.2d 1114, 1124 (W.D.Wash.2006).

Plaintiffs' next claim is that the director defendants face the substantial likelihood of liability because they have failed to fulfill their oversight responsibilities, particularly with regard to public statements about the progress of Surfaxin. Again, now that we have found that none of the disputed statements was false or misleading, there is no likelihood that the individual defendants will be subjected to liability as a result of some

---

5. With the exception of Capetola, the directors were not defendants in the securities fraud suit. Our determination, however, was based on the substance of the statements, not the identity of the speaker, so it applies equally to the director defendants for those statements that can be fairly attributed to them.

6. We note that each of the challenged committees has only two defendant directors and so would be insufficient, standing alone, to demonstrate demand futility.

7. Plaintiffs cite no case in support of their broad claim that the directors on the Compliance Committee breached their fiduciary duties by not preventing Capetola from making these allegedly false statements.

8. The complaint mentions "the August of 2005 admissions of continued financial misreporting," Compl. ¶ 8, but since these allegations appear nowhere else and because we are aware of no such admission(s), we must assume the reference is the result of an injudicious use of word processing cut-and-paste to assemble the complaint. Our theory finds rather colorful support in the claim recited in ¶ 11, obviously left over from some previous suit, that venue is proper in this Court (which, we remind plaintiffs, is located in the Commonwealth of Pennsylvania) because "each defendant has extensive contact with California." The inclusion of these totally unsubstantiated allegations of financial improprieties is at best highly irresponsible. Although this error was called to their attention in defendants' memorandum, Def. Mem. at 17 n. 14, plaintiffs have not bothered to correct it.

oversight failure. Further, even though demand futility must be pled with particularity, plaintiffs have put forward no detailed allegations of oversight that should have been undertaken and was not, or a policy that would have improved compliance but that Discovery failed to institute.

Plaintiffs' remaining, more general claims about the directors' independence are no more successful. It is not enough for plaintiffs to claim, without support, that the defendants participated in the challenged action or inaction and would, therefore, be unwilling to sue themselves. *See In re Prudential Ins. Co. Deriv. Litig.*, 282 N.J.Super. 256, 659 A.2d 961, 971 (1995) ("A plaintiff may not bootstrap allegations of futility merely by alleging that the directors participated in the challenged transaction or that they would be reluctant to sue themselves."). Similarly, the Delaware courts have rejected claims that an "insured vs. insured" exclusion in the directors' and officers' insurance policy or in the Section 102(b)(7) exculpation clause is sufficient to establish demand futility. *See Orloff v. Shulman*, 2005 WL 3272355 at *13 (Del.Ch. Nov. 23, 2005).

Next, plaintiffs attempt, on several different bases, to establish a lack of independence by showing that "the directors are 'beholden' to [a controlling person] [9] or so under [his or her] influence that their discretion would be sterilized." *Rales*, 634 A.2d at 936.

Not surprisingly—since a contrary finding would mean that most, if not all, directors lack independence—courts have not found that the payment of "a usual and customary director's fee" compromises a director's independence. *Orman v. Cullman*, 794 A.2d 5, 29 n. 62 (Del.Ch.2002) (citing *Grobow v. Perot*, 539 A.2d 180, 188 (Del.1988)). Plaintiffs do not allege that the fees paid to Discovery Laboratories' directors were anything other than usual and customary, and they do not differ significantly from those in *White v. Panic*, 793 A.2d 356, 366 (Del.Ch.2000), where the court found that the directors were not beholden to the CEO on that basis.

Similarly, the fact that defendant Esteve controls nearly 6% of the company's stock does not demonstrate a lack of independence. *See Aronson*, 473 A.2d at 815 ("[I]n the demand context even proof of majority ownership of a company does not strip the directors of the presumptions of independence, and that their acts have been taken in good faith and in the best interests of the corporation.").

In one final attempt to demonstrate that the other directors are beholden to Capetola, plaintiffs identify a series of "prejudicial entanglements," Pl. Mem. at 20, among the directors, including prior business collaborations and service together on other boards. Though plaintiffs cite cases in which courts have found lack of independence based in part on past relationships, Pl. Mem. at 21–22, all of those cases involve some other fact that tends to show an obligation to the allegedly controlling person. Plaintiffs allege no such obligation and, without more, allegations of prior relationships among directors do not establish a lack of independence.[10] *See, e.g., Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1051 (Del.2004) ("Allegations that Stewart and the other directors moved in the same social circles, attended the same weddings, developed business relationships before joining the board, and described each other as 'friends,' even when coupled with Stewart's 94% voting power, are insufficient, without more, to rebut the presumption of independence.").

For all of these reasons, plaintiffs have not alleged facts sufficient to support their claim

---

**9.** We presume that the implication here is that all the directors are beholden to Capetola but, because plaintiffs are nowhere explicit about the basis for this claim, we cannot be sure we are correct. Nevertheless, because the procedural posture requires us to make "all reasonable inferences that can be drawn from [the allegations] after construing them in the light most favorable to the non-movant," *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994), we will do our best to make a colorable claim out of plaintiffs' vague allegations.

**10.** Plaintiffs apparently believe that, in order to maintain independence, only total strangers should be brought onto a corporate board. Again, under such a regime, we would be hard-pressed to find any board that meets the requirements to be considered independent.

that a demand would have been futile that the board of directors institute this action on the corporation's behalf.

Though we dismiss on demand futility grounds, even were we to reach the substance of plaintiffs' claims, we would still grant defendants' motion to dismiss. Because these claims all arise from a core allegation that the directors placed corporate assets at risk by opening the company up to a federal securities fraud suit, our decision in *Discovery II* that none of the allegedly fraudulent statements would support such a suit is controlling. We have determined as a matter of law that the statements in question do not support federal securities fraud liability. Defendants, therefore, have caused no harm to the company either by making those statements or by failing to prevent their publication. In the absence of any remaining claim of harm, there is no basis for a derivative suit.[11]

Although we do not expect that plaintiffs will be able to overcome these problems with their claim, we will (reluctantly) grant them a last time in which to revise their complaint[12] and re-file.

### ORDER

AND NOW, this 1st day of May, 2007, upon consideration of defendants' motion to dismiss (docket entry # 17), plaintiffs' response (docket entry # 22) and defendants' motion to file a reply (docket entry # 23), as well as the parties' supplemental briefs filed in response to our Order of March 19, 2007 (docket entries 27 & 29), and for the reasons articulated in the accompanying Memorandum of Law, it is hereby ORDERED that:

1. Defendants' motion for leave to file a reply is GRANTED;

2. Defendants' motion to dismiss is GRANTED; and

3. Plaintiffs may FILE an amended complaint by May 15, 2007 and defendants shall respond by May 29, 2007.

---

11. The parties have devoted a great deal of energy in their briefs to arguing whether these claims "sound in fraud" and therefore call into play the heightened pleading standards of Fed.R.Civ.P. 9(b). Because we find that, regardless of the pleading standard applied, plaintiffs' allegations are insufficient, we need not here resolve that question.

12. We remind plaintiffs that they are required to proofread their amended complaint before submitting it and ensure that only claims relevant to *this* case are included. *See* Fed.R.Civ.P. 11(b)(3) and note 8 *supra*.